NATHANIEL JARVIS, Jr., Plaintiff, v. THE MANHATTAN BEACH COMPANY, Defendant.

*Estoppel — liability of a corporation for stock fraudulently issued in excess of the authorized capital thereof.*

Edward C. Fox & Co., a firm of brokers, were requested by one Fullerton, the clerk of the Manhattan Beach Company, to sell 100 shares of its stock standing in the name of B. Bignell, the certificate for such stock having appended to it the genuine signatures of the defendant's president and assistant treasurer, and having been regularly countersigned and registered by the Central Trust Company. Bignell was a fictitious person, and a fraud had been committed by Fullerton, who had obtained the genuine signatures of the officers of the company to, and had receipted in Bignell's name for this certificate after all the authorized capital stock of the company had been issued and was in circulation, and had also signed the name " B. Bignell " to the transfer on the back of the certificate and then witnessed the signature in his own name.

Before selling the certificate Fox & Co. made inquiry at the Central Trust Company and were there informed that the stock was properly registered, and at the general office of the Manhattan Beach Company, which was also its general transfer office in the city of New York, and were there informed that the stock was properly indorsed for transfer and that the person in charge was then willing to make the transfer. Fox & Co. thereupon sold the stock in September, 1882, and paid over the purchase-price, less commission to Fullerton, and heard nothing more of it until March, 1884, when Fullerton absconded, and this, together with other fraudulent transactions, were discovered.

The Manhattan Beach Company having notified the Stock Exchange of the invalidity of the certificate, Fox & Co., who were required by the rule of the Stock Exchange to make good their guaranty, as to its validity, did so and received the certificate of stock back from their vendee, and subsequently demanded a transfer of such shares of stock from the Manhattan Beach Company, which was refused; against which corporation an action was thereupon brought by the assignee of Fox & Co.

*Held,* that the defendant, the Manhattan Beach Company, was estopped to deny the validity of the certificate.

That the plaintiff was entitled to genuine stock therefor if that were possible; but that, that being impossible, he was entitled, upon the defendant's repudiation of the certificate, to recover appropriate damages.

Motion by the plaintiff for a new trial after a dismissal of his complaint at the New York Circuit March 13, 1889, and a direction that the exceptions in the case be heard in the first instance at the General Term.

*W. D. Guthrie* and *Victor Morawetz*, for the plaintiff.

*W. J. Kelly*, for the defendant.

Barrett, J.:

The plaintiff sues as assignee of a firm of stockholders, Edward C. Fox & Co. The action is for damages sustained under these circumstances: Fox & Co. were requested by one Fullerton to sell 100 shares of the defendant's stock, standing in the name of B. Bignell. Fullerton was at the time the defendant's clerk. He handed Fox & Co. a certificate for the 100 shares, which appeared to be entirely genuine, but which, in fact, was not. It had appended to it the genuine signatures of the defendant's president and assistant treasurer ; and, at the defendant's request it had been regularly countersigned and registered by the Central Trust Company. B. Bignell, however, was a fictitious person, and when the defendant's officers negligently signed the certificate in question, all the authorized capital stock of the company had been issued and was in circulation. The fraud was Fullerton's. He had receipted for this certificate in Bignell's name on the books of the company. He had also signed the name " B. Bignell " to the transfer on the back of the certificate, and then witnessed·the signature in his own name. That was the condition of things when Fullerton asked Fox & Co. to sell the certificate. There is a rule of the Stock Exchange *known to the defendant,* which, as between members, requires that the seller of the stock shall guaranty to the purchaser the correctness of the certificate, and also of the transfer. Fox & Co. sold the stock, and in compliance with the rule gave the necessary guaranty. Before doing so, however, they made inquiry at the Central Trust Company and were there informed that the stock was properly registered. They then made inquiry at the defendant's general office, which was also its general transfer office in this city, and were there informed that the stock was properly indorsed for the transfer, and that the person in charge was then willing to make the transfer. Upon this Fox & Co. acted. The stock, with their guaranty, was sold and delivered; and the purchase-price, less commission, was paid over to Fullerton. This was in September, 1882, and nothing more was heard of the matter until March, 1884, when Fullerton absconded, and this and other

frauds of his were discovered. Thereupon the defendant notified the Stock Exchange of the invalidity of several certificates, this among the number, and that they would not be accepted as genuine stock of the company. Fox & Co. were thereupon required to make good their guaranty which they did, receiving the certificate back from their vendee and subsequently demanding a transfer from the defendant, which was refused. The defendant having entirely repudiated this spurious stock, the present action was brought.

Upon this state of facts, we think the learned judge erred in taking the case from the jury and dismissing the complaint. It is conceded that the case is to be treated as though Fox & C♦. had purchased the stock from Fullerton. The principle is the same whether they purchased or guaranteed. In either case they are out of pocket the price of the stock. The payment under the guaranty was compulsory, and they were then subrogated to the worthless security. It also seems to be conceded that if Fox & Co. had originally availed themselves of the transfer clerk's offer, and had had the stock transferred into their names on the books of the company, the latter would have been estopped. Such, at all events, was the decision of the Circuit Court (WALLACE, J.), in *Manhattan Beach Co.* v. *Harned* (27 Fed. R., 484). There the purchase had been made *without any previous inquiry of the company*, yet the court held that it was estopped by issuing a new certificate. By that act " they not only reaffirmed the authenticity of the surrendered certificate, but *recognized the defendant's title to the shares*, and thereby authorized the defendants to repose, without further inquiry, upon the validity of the title they had acquired." And the court further held, that the company was estopped by its subsequent negligence in not discovering the fraud and notifying the defendants in time to enable them to seek restitution from the swindler.

Here the brokers made the fullest inquiry *before the purchase*, and the company recognized the title of the holder of the blank assignment, and authorized Fox & Co. to " repose without further inquiry " upon the validity of such title. The learned judge in the Harned case intimated that the invalid certificate was not the proximate cause of the injury, for the reason that the purchaser had relied solely upon the fraudulent transfer. It should not be

overlooked, however, that Bignell has no being and is a fictitious person. This is averred in the answer and was not questioned upon the trial. Now, the certificate was an affirmation that Bignell was a real person and the true owner of the shares (*Holbrook* v. *New Jersey Zinc Co.*, 57 N. Y., 616), with capacity to transfer them upon the books of the company. This affirmation of ownership and capacity to transfer was as false as the affirmation that the certificate represented a part of the capital stock of the company. The purchaser in the Harned case necessarily relied upon this affirmation of ownership and capacity to transfer as well as upon the affirmation of the genuineness of the stock, for Gray, in whose name the stock there stood, was also a fictitious person.

These facts the defendants placed it in the power of Fullerton to utilize. It is difficult to perceive, therefore, why the representation made by the issue of such a certificate was not the proximate cause of the injury. The purchaser paid his money in reliance upon the company's affirmation that the individual upon whose signature the transfer depended was a real person. As he was fictitious there could have been no genuine indorsement, and the purchaser lost nothing by the Shaw indorsement. He paid his money upon the false representation *made by the certificate, that* title could be acquired by a genuine assignment, when, in truth, a genuine assignment was impossible. The legal effect of such a certificate was substantially the same as if it had been issued to "bearer." Such is the rule with regard to bills put in circulation with a fictitious payee. (*Coggill* v. *American Exchange Bank*, 1 Comst., 113.) And the analogy is not strained when we consider, as was said by the learned judge in the Harned case, that "shares of corporate stock are dealt with in the market *like negotiable paper* or chattels; and the certificates issued as evidence of the ownership of the shares are the *indicia* of title and are treated as representing the shares themselves."

It is not necessary, however, to decide definitely whether the plaintiff could recover upon the representation made by the certificate standing alone, for this case differs from the Harned case, in the crucial fact that Fox & Co. did not rely upon the certificate alone, but sought, as we have already seen, to make assurance "doubly sure," to quote the testimony, by inquiry of the defendant. In considering the effect of this inquiry, it must be remembered

that the company had caused its stock to be listed on the Stock Exchange, and that it was aware of the requirement of a guaranty (in transactions between members of that body) not only of the genuineness of the certificate, *but of the indorsement.* It knew, too, that members of the board relied upon the company for information and invariably gave the guaranty upon the faith thereof. The company kept a record of its stockholders' signatures, and it was its duty to verify such signatures when applied to for information as to the genuineness of the transfer. Indeed, such was the custom of Wall street, and the defendant was well aware that business was being transacted and transfers made upon the faith of the double inquiry; first as to the genuineness of the certificate, and, second, as to the genuineness of the transfer indorsed thereon.

In the light of these surrounding circumstances, Fox & Co. presented the certificate at the defendant's general transfer office and were informed, as already stated, that it was· properly indorsed for transfer, and that the person in charge was willing to transfer it. The proximate cause of Fox & Co.'s injury was plainly *this representation coupled with the affirmation of the certificate.* This was a reaffirmation of the validity of the certificate, of the reality of B. Bignell, and of the genuineness of the signature of that fictitious person to the transfer indorsed. It was made with full knowledge of the inquiry (namely, that the stock might be safely purchased) and with the means directly at hand, in the books lying before the agent, of discovering the fraud and saving the innocent inquirer from loss. This is a plain case of estoppel, entitling the plaintiff to genuine stock if that were possible; but that being impossible, entitling him, upon the defendant's repudiation of the certificate, to appropriate damages.

The authority of the person who made these representations is questioned. But the evidence on that head was certainly sufficient to go to the jury. (*Leslie* v. *Knickerbocker Life Ins. Co.*, 63 N. Y., 34; *Dunn* v. *Star Fire Ins. Co.*, 19 Week. Dig., 531.) Indeed, there was testimony from which the presence of the defendant's treasurer, Mr. Moulton, might have been inferred; and that it was he who answered the inquiry. Fullerton was the transfer clerk and he acted under Mr. Moulton's "supervision and inspection." The defendant's present secretary, Mr. McDonough, testified that at the

time when the inquiry was made "there was no other employee of the Manhattan Beach Company in the office with Mr. Fullerton *except the treasurer, Mr. Moulton.*" But even if it were not Mr. Moulton, the testimony was ample that it was at least an authorized person. Fox & Co.'s clerk testified that this person was in charge of the office and was in the regular employ of the defendant. When Fullerton was out this person was in his place, and he had personally transferred stock for Fox & Co., and had had transactions with their clerk in regard to the transfer of certificates. This evidence being sufficient to go to the jury, the questions which the plaintiff asked to submit should, under the principle of the *Schuyler Case* (34 N. Y., 30), have been submitted ; and, if answered in the affirmative, would have warranted a verdict for the amount received by Fox & Co., from the original purchaser and paid over to Fullerton. The exceptions should, therefore, be sustained and a new trial ordered, with costs to the plaintiff to abide the event.

VAN BRUNT, P. J., and DANIELS, J., concurred.

Exceptions sustained and a new trial ordered, with costs to the plaintiff to abide the event.