The Fifth Avenue Bank of New York, Respondent, *v.*  The Forty-second Street and Grand Street Ferry Railroad Company, Appellant.

A principal is liable to a third person in a civil action for the fraud or other malfeasance of his agent, perpetrated by the latter in the course of his employment, although the principal did not authorize, justify or know of the misconduct.

Where a certificate of stock contains apparently all the essentials of genuineness a *bona fide* holder thereof is entitled to recognition as a stockholder, if a new certificate can legally be issued to him, or to indemnity if this cannot be done.

The fact that an official signature to the certificate has been forged does not extinguish this right, where the forgery has been done by or at the instance of an officer of the corporation, intrusted with the custody of its stock books, and held out by the company as the source of information on that subject.

While certificates of stock in railroad and other business corporations do not possess in full the qualities of commercial paper, when the transfer indorsed thereon is signed in blank by the shareholder named therein, they become in effect, so far as the public is concerned, the same as if they had been issued to bearer.

One A. was defendant's secretary, treasurer and transfer agent, and as such secretary kept and had in his custody its books relating to the issue and transfer of stock. Its by-laws require that "all certificates shall be issued and signed by the president and treasurer and countersigned by the transfer agent." A. filled out a blank certificate taken from defendant's certificate book, forged the name of its president thereto, signed his own name as treasurer, then countersigned it and impressed thereon the corporate seal. The certificate upon its face was perfect and regular in every respect and showed one H. to be the owner of the shares of stock stated therein. The testimonium clause recited that defendant had caused the certificate to be signed by its president and countersigned by its treasurer and transfer agent, and sealed with its corporate seal. H. procured of plaintiff a loan upon his note secured by a pledge of the certificate. Before acting upon the application of H. for the loan, plaintiff sent a clerk with the certificate to defendant's office, who showed it to A. who was in charge of the office; he stated that the certificate was genuine and all right and that H. was a stockholder, and relying thereon plaintiff discounted the note. In an action to recover damages because of defendant's refusal to recognize the certificate as valid evidence of title to the shares of stock stated therein, *held*, that plaintiff was entitled to recover; that defendant was

liable for the representations of its officer appearing on the face of the certificate, and acted upon in good faith by plaintiff; that when A. countersigned, sealed and put it in circulation he declared in a most formal manner that every essential requirement had been performed to make it the binding act of defendant and, so long as it remained outstanding, it was to be regarded as a continuing affirmation by defendant that it had been lawfully issued.

Plaintiff under authority from H. sold the certificate and credited the proceeds to him. Upon refusal of defendant to recognize it plaintiff refunded the purchase-money and took back the certificate with an assignment from the purchasers of all rights of action against defendant. *Held,* that plaintiff's rights were not affected by the sale; and that by the assignment and redelivery it acquired the right to enforce whatever remedies said purchaser had as *bona fide* holder against defendant, although plaintiff was then aware of the fraudulent issue.

(Argued January 20, 1893; decided February 28, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made February 18, 1892, which overruled defendant's exceptions and granted a motion for a new trial and ordered judgment in favor of plaintiff on a verdict directed by the court.

This was an action to recover damages because of defendant's refusal to receive two certificates of stock, which purported to have been issued by it, and to transfer the stock represented by them to plaintiff and admit it as a shareholder in defendant's corporation.

The facts, so far a material, are stated in the opinion.

*Freling H. Smith* for appellant. The motion to dismiss the complaint should have been granted. (*M. Bank* v. *N. Y. & N. H. R. R. Co.,* 13 N. Y. 599; *N. Y. & N. H. R. R. Co.* v. *Schuyler,* 34 id. 30; *Bruff* v. *Mali,* 36 id. 200; *Claflin* v. *F. & C. Bank,* 25 id. 293; *Moores* v. *C. N. Bank,* 111 U. S. 156; *Farrington* v. *S. B. R. R. Co.,* 150 Mass. 406; *Wilson* v. *M. E. R. Co.,* 120 N. Y. 145; *Anderson* v. *Nicholas,* 28 id. 600; *Holbrook* v. *Fauquier,* 3 Cranch, 425; *Stebbins* v. *P. F. Ins. Co.,* 3 Paige, 350; *U. Bank* v. *Laird,* 2 Wheat. 390; Cook on Stock and Stockholders, § 368; *Bush* v. *Lath-*

*rop,* 22 N. Y. 535; *Ballard* v. *Burgett,* 40 id. 314; *Moore* v. *M. N. Bank,* 55 id. 41; *Weaver* v. *Barden,* 49 id. 286; *Fairbanks* v. *Sargent,* 104 id. 108; *G. N. Bank* v. *Bingham,* 118 id. 349; *Holbrook* v. *N. J. Z. Co.,* 57 id. 616; *Titus* v. *G. W. T. R. Co.,* 61 id. 237; *Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.,* 106 id. 195.) There is no element of estoppel in the case. (*Bickford* v. *Menier,* 107 N. Y. 490; *People* v. *Bank,* 75 id. 547.) There was no implied authority in Allen by virtue of his office. (*M. Bank Case,* 13 N. Y. 599; *Dabney* v. *Stephens,* 40 How. Pr. 341; 46 N. Y. 681; *W. R. R. Co.* v. *Bayne,* 11 Hun, 166; *Adams* v. *Mills,* 60 N. Y. 533.) If a certificate could be authenticated at all, save by an actual transfer, this could be done only by the joint and several representations of each and all the officers whose duty it was to sign the certificate. (*M. Bank Case,* 13 N. Y. 599.) From the point of view most unfavorable to defendant there was at least a question for the jury. (*Patterson* v. *Robinson,* 116 N. Y. 193; *Shipman* v. *Bank,* 126 id. 318; *Weisser* v. *Dennison,* 10 id. 68; *Welsh* v. *G. A. Bank,* 73 id. 424.) The plaintiff cannot avail itself of an estoppel, even assuming one to have existed before the notes, to secure which the certificates were pledged, were paid. (*Moores* v. *C. N. Bank,* 111 U. S. 156; *Farrington* v. *S. B. R. R. Co.,* 150 Mass. 406; *Maguire* v. *Selden,* 103 N. Y. 642; *Mayenborg* v. *Haynes,* 50 id. 675.) The trial court erred in excluding testimony offered by defendant showing that Allen had no authority to authenticate certificates, and that no such practice existed, and the exceptions to such rulings are well taken. (*N. Y. L. Ins. Co.* v. *Beebe,* 3 N. Y. 364.) The verdict was excessive. (*Farwell* v. *I. & T. Bank,* 90 N. Y. 483; *Claflin* v. *Bank,* 25 id. 293; *Moores* v. *Bank,* 111 U. S. 156; *Farrington* v. *S. B. R. R. Co.,* 150 Mass. 406· *Wilson* v. *M. E. R. Co.,* 120 N. Y. 145.)

*Edward C. James* for respondent. When overissued certificates of stock, signed or purporting to be signed by the corporate officers, having authority to issue stock, and actually

issued by such officers, are purchased by any person, or are taken in any manner in good faith and for value, such *bona fide* holder may sue the corporation in tort and recover damages. (Cook on Stock, etc. § 298 ; *R. R. Co.* v. *Schuyler*, 34 N. Y. 30, 49, 60 ; *Bruff* v. *Mali*, 36 id. 200 ; *Titus* v. *T. Co.*, 5 Lans. 250 ; 61 N. Y. 237 ; *Bank of Kentucky* v. *S. Bank*, 1 Pars. Sel. Cas. 180 ; *Tome* v. *R. R. Co.*, 39 Md. 36 ; *R. R. Co.* v. *Bank*, 60 id. 36 ; *Willis* v. *R. R. Co.*, 6 Wkly. Notes Cas. 461 ; *Willis* v. *Fry*, 13 Phila. 33 ; *Bank* v. *Kurtz*, 99 Penn. St. 344 ; *Allen* v. *S. B. R. R. Co.*, 5 Law Rep. Ann. 716.) Defendant is bound to make good the plaintiff's loss by reason of its dealings with these certificates on faith of their genuineness, as authenticated by the countersignature of the transfer agent and the corporate seal, without any regard to the special assurances given to the plaintiff in respect to the certificate for 160 shares upon which the court below predicated its decision. (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30 ; *Bank* v. *R. R. Co.*, 106 id. 195 ; *Holbrook* v. *Zinc Co.*, 57 id. 616 ; *Bank* v. *Clements*, 6 Bosw. 166 ; 31 N. Y. 33 ; *M. B. Co.* v. *Harned*, 27 Fed. Rep. 486, 487 ; *Weyh* v. *Boylan*, 85 N. Y. 395, 399 ; *In re B. & S. F. R. Co.*, L. R. [3 Q. B.] 584 ; *Shaw* v. *P. P. & C. G. M. Co.*, L. R. [13 Q. B. Div.] 103 ; *Tome* v. *R. R. Co.*, 39 Md. 36 ; *R. R. Co.* v. *Bank*, 60 id. 36 ; *Commonwealth* v. *Bank*, 137 Mass. 431 ; *Holden* v. *Phelps*, 141 id. 456 ; *Jarvis* v. *M. B. Co.*, 53 Hun, 362 ; *Bank* v. *Lamar*, 11 Wall. 377 ; *Edwards* v. *Dooley*, 120 N. Y. 540, 551, 552 ; *Bickford* v. *Menier*, 107 id. 490 ; *Walsh* v. *Ins. Co.*, 73 id. 5, 10.) The defendant is also liable, upon the certificate for 160 shares, because its secretary, treasurer and transfer agent, placed in charge of its office to communicate for it with the outside world on matters relating to its stock and business, told the plaintiff's messenger, in answer to his inquiry about this certificate, as security for the proposed loan to Mr. Hofele, that it was genuine and correct and that Hofele was a stockholder there. (*White* v. *Bank*, 64 N. Y. 316 ; *Flickner* v. *Bank of U. S.*, 8 Wheat. 338 ; *Titus* v. *G. N. T. Co.*, 61 N. Y. 237.) The

question of *ultra vires* can only be raised by the state authori-
ties.   It is not available to the defendant in this action.   (*N.
Bank* v. *Stewart*, 107 U. S. 676 ; *Thompson* v. *S. N. Bank*,
113 N. Y. 325.)   The defendant relies upon the proposition
that one who receives from an officer of a corporation the notes
or securities of such corporation, in payment of or as security
for a personal debt of such officer, does so at his peril.   This
is untenable.   (*Wilson* v. *M. E. R. Co.*, 120 N. Y. 145, 150 ;
*Titus* v. *T. Co.*, 61 id. 237.)   The plaintiff's counsel had the
right to read in evidence such parts of the deposition of
Eben S. Allen as he desired to bring before the court and
jury, and the defendant's counsel had the same right.   The
objection, that the defendant's counsel must read the whole or
none was properly overruled.   (*Gellatly* v. *Lowery*, 6 Bosw.
113 ; *Jordan* v. *Jordan*, 3 T. & C. 269.)   When the evidence
closed there was no disputed question of fact to go to the
jury.   (*Dillon* v. *Cockcroft*, 90 N. Y. 649 ; *Mayer* v. *Drew*,
115 id. 556.)

MAYNARD, J.   In September, 1885, the plaintiff, a domestic
banking corporation, loaned one Hofele fifteen thousand
dollars upon his individual note payable in three months and
secured by the pledge of an instrument which upon its face
purported to be a certificate for one hundred sixty shares of
stock of the defendant; a domestic railroad corporation
having its office and principal place of business in the same
city with the plaintiff.   It was subsequently discovered that
this certificate was spurious, and that the signature thereto of
the defendant's president had been forged by one Eben S.
Allen, its secretary, who was also its treasurer and transfer
agent, and who had in these capacities signed and counter-
signed the certificate and delivered it to Hofele, who was his
partner in business, for the purpose of raising money upon it,
to be used in the firm undertaking.

We are required upon this appeal to determine how far the
defendant company is liable for the loss sustained by the
plaintiff in consequence of this fraudulent and criminal act of
one of its principal officers.

The good faith of the plaintiff in the transaction, by means of which it became possessed of the forged certificate, seems to be satisfactorily established. Hofele was a stranger to the officers of the bank, and they had no knowledge of his business relations with Allen, or that the latter was, in any way, interested in the proposed loan. Before acting upon Hofele's application for a discount, the plaintiff's president sent its confidential clerk to the office of the defendant with the certificate, who, pursuant to instructions, showed it to the person in charge of the office, who was then unknown to the clerk, but who proved to be Allen, its secretary and treasurer, and who was asked if it was genuine and all right and if Hofele was a stockholder of the company, to which an affirmative reply was given, and a description of Hofele, from which the bank might identify him as the person who had presented the certificate and sought the loan upon the strength of it. The clerk reported the result of the interview to the plaintiff's officers, who thereupon discounted Hofele's note for the sum named payable in three months and accepted the certificate as collateral security in the usual form for its payment and for all other present or future demands of the bank against him. The note was renewed from time to time and increased in amount, and some smaller notes given until his indebtedness amounted to $35,000 and upwards. Meanwhile the plaintiff had taken as additional security a like certificate for fifty shares to which the signature of the defendant's president had also been forged, and which was first received as security for a loan of $5,000. This loan was afterwards consolidated with the other loans and became a part of the total indebtedness for which both certificates were held as security. Upon the pledge of the fifty share certificate, the plaintiff made no inquiries of the defendant, or of any of its officers with reference to its genuineness.

In July, 1889, Hofele ordered the plaintiff to sell the two certificates and signed the usual blank transfer or power of attorney for that purpose upon the back of them. When they were first hypothecated he had executed a separate power

of attorney authorizing plaintiff to sell and transfer them in case of default in the payment of the loans. The certificates were sold by plaintiff's brokers and the net sum of $43,890 received and placed to Hofele's credit and his indebtedness charged to his account, leaving an apparent balance due him of $8,479.

When the certificates were presented by the purchasers at the office of defendant for transfer, it was refused upon the ground that they were forged and spurious, and the treasurer and transfer agent wrote across their face in red ink the words " no good," and added their official signatures to the statement. The plaintiff then refunded to the purchasers the amount paid upon the sale of the certificates, and took an assignment from them of all rights of action which they had against the defendant, and upon the refusal of the defendant to recognize the certificates as valid evidences of title to its shares of stock, this action was brought, in which the plaintiff has recovered for its loss on account of the invalidity of the one hundred and sixty share certificate, and the defendant alone has appealed.

With respect to this certificate we fail to discover any omission on the part of the plaintiff which would impeach its character as a *bona fide* holder. It made inquiry at the office of the defendant, where its books and records were kept, and of the officer in charge, whose duty it was to furnish correct information upon the subject, and it had no reason to suspect that the assurances it received were misleading or false, or that the officers of the defendant had entered into a conspiracy with Hofele to defraud the public.

It resorted to the only source of verification of the truth of Hofele's statements which was readily accessible; and it exercised all the care and vigilance which a prudent man would be expected to exhibit in the ordinary course of the business in which it was engaged. There was no circumstance proven which required a display of greater diligence. Nor were the rights of the plaintiff affected by the sale of the certificates and their re-delivery to the plaintiff upon a refund of the pro-

ceeds of the sale to the purchasers. Though nominally sold on the account of Hofele, the plaintiff was the real party in interest in the transaction. There was an implied guaranty of the genuineness of the certificates, which the vendor might be required to make good, and as the plaintiff had received the fruits of the transaction, the consideration of which had failed, it could not lawfully withhold them from the purchasers when restoration was demanded. The purchasers were also *bona fide* holders of the certificates, and the plaintiff by their assignment acquired the right to the enforcement of whatever remedies they might have in that capacity against the defendant, although it was then aware of their fraudulent issue. While certificates of stock in railroad and other business corporations do not possess the qualities of commercial paper in the full sense of the term, yet as evidences of title, when the transfer indorsed thereon is signed in blank by the shareholder, they become, in effect, so far as the public is concerned, as if they had been issued to bearer. They are then readily transferrible by delivery, and have an element of nego· tiability which renders them an important factor in the financial and commercial transactions of the country. They may be and are frequently listed upon the stock exchanges, and their sales represent a large proportion of the daily business of these bodies.

The plaintiff must, therefore, be accorded whatever advantage belongs to a holder in good faith of a chose in action of this character, and we have only to consider how far the defendant is responsible for the acts and representations of its officers, by means of which Hofele was enabled to obtain the plaintiff's money upon the faith of paper apparently valid, but in fact worthless.

The defendant was incorporated under the General Railroad Law, originally with a capital of $600,000, afterwards increased to $750,000, all of which had been issued, excepting twenty shares, before 1870. Its books relating to the issue and transfer of stock consisted of a certificate book, a transfer book and a stock ledger, which were all kept by the secretary, and

were in his immediate custody; but in his official capacity
and work, he was subject to the supervision of the president,
and all the officers were under the general control and man-
agement of a board of directors. It is apparent from the
evidence that the secretary was, *ex officio*, the transfer agent
of the company. At least, from 1868 to the present time the
secretary had acted as such agent, and there is no provision in
the by-laws for the separate appointment of a transfer agent
and the only reference to such an officer is in a single para-
graph in section fifteen, where it is provided that " all certifi-
cates shall be issued and signed by the president and treasurer
and countersigned by the transfer agent, under such other
regulations as the board of directors or finance committee may
from time to time prescribe." Whether the secretary was by
virtue of his office transfer agent is not material, but the fact
remains that so far as the evidence discloses anything upon the
subject, he always discharged the duties of that office, and in
the performance of the work was fitly characterized as the
transfer agent of the company. When stock was issued,
either in payment of an original subscription, or upon its
transfer from one person to another the engraved certificate
was taken from the certificate book and filled up by the secre-
tary, presented to the president and treasurer, who signed it,
and it was then countersigned by the secretary as transfer
agent and sealed by him with the seal of the corporation and
delivered to the stockholder or transferee named in it. The
secretary at the same time inserted the proper data in the
stub remaining in the certificate book, and made the necessary
entries in the transfer book and the stock ledger. The certi-
ficate received by plaintiff from Hofele had been taken from
the certificate book. It appeared upon its face to be perfect
and regular in every respect. It had the name of the presi-
dent and treasurer signed to it, was countersigned by the
transfer agent, and bore the impress of the corporate seal. It
recited that Hofele was the owner of one hundred and sixty
shares of one hundred dollars each of the capital stock of the
company, contained the usual provisions in regard to the mode

of transfer, and declared that no certificate should bind the company unless signed by the president and countersigned by its treasurer and transfer agent. The *in testimonium* clause asserted that the defendant had caused that particular certificate to be signed by its president and countersigned by its treasurer and transfer agent and sealed with its corporate seal February 6, 1885. It is very clear that under the regulations adopted by the defendant, and pursuing the mode of procedure which it had prescribed, the final act in the issue of a certificate of stock was performed by its secretary and transfer agent, and that when he countersigned it and affixed the corporate seal and delivered it with the intent that it might be negotiated, it must be regarded, so long as it remained outstanding, as a continuing affirmation by the defendant that it had been lawfully issued, and that all the conditions precedent upon which the right to issue it depended had been duly observed. Such is the effect necessarily implied in the act of countersigning. This word has a well defined meaning both in the law and in the lexicon. To countersign an instrument is to sign what has already been signed by a superior, to authenticate by an additional signature, and usually has reference to the signature of a subordinate in addition to that of his superior by way of authentication of the execution of the writing to which it is affixed, and it denotes the complete execution of the paper. (Worcester's Dic.) When, therefore, the defendant's secretary and transfer agent countersigned and sealed this certificate and put it in circulation he declared in the most formal manner that it had been properly executed by the defendant, and that every essential requirement of law and of the by-laws had been performed to make it the binding act of the company. The defendant's by-laws elsewhere illustrate the application of the term when used with reference to the signatures of its officers. In section 10 it is provided that all moneys received by the treasurer should be deposited in bank to the joint credit of the president and treasurer, to be drawn out only by the check of the treasurer, countersigned by the president. If

the president should forge the name of the treasurer to a check and countersign it and put it in circulation and use the proceeds for his individual benefit, we apprehend it would not be doubted that this would be regarded as a certificate of the due execution of the check, so far as to render the company responsible to any person who innocently and in good faith became the holder of it.

This result follows from the application of the fundamental rules which determine the obligations of a principal for the acts of his agent. They are embraced in the comprehensive statement of Story in his work on Agency (9th ed. § 452), that the principal is to be " held liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances, or misfeasances and omissions of duty of his agent in the course of his employment, although the principal did not authorize, or justify, or participate in, or, indeed, know of such misconduct, or even if he forbade the acts or disapproved of them. In all such cases the rule applies *respondeat superior*, and is founded upon public policy and convenience, for in no other way could there be any safety to third persons in their dealings, either directly with the principal, or indirectly with him through the instrumentality of agents. In every such case the principal holds out his agent as competent and fit to be trusted, and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of the agency." It is true that the secretary and transfer agent had no authority to issue a certificate of stock except upon the surrender and cancellation of a previously existing valid certificate, and the signature of the president and treasurer first obtained to the certificate to be issued; but these were facts necessarily and peculiarly within the knowledge of the secretary, and the issue of the certificate in due form was a representation by the secretary and transfer agent that these conditions had been complied with, and that the facts existed upon which his right to act depended. It was a certificate apparently made in the course of his employment as the agent of the company and within the scope of the

general authority conferred upon him, and the defendant is under an implied obligation to make indemnity to the plaintiff for the loss sustained by the negligent or wrongful exercise by its officers of the general powers conferred upon them. (*Griswold* v. *Haven*, 25 N. Y. 599; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 id. 30; *Titus* v. *G. W. Turnpike Co.*, 61 id. 237; *Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.*, 106 id. 199.) The learned counsel for the defendant seeks to distinguish this case from the authorities cited because the signature of the president to the certificate was not genuine; but we cannot see how the forgery of the name of the president can relieve the defendant from liability for the fraudulent acts of its secretary, treasurer and transfer agent. They were officers to whom it had entrusted the authority to make the final declaration as to the validity of the shares of stock it might issue, and where their acts, in the apparent exercise of this power, are accompanied with all the indicia of genuineness it is essential to the public welfare that the principal should be responsible to all persons who receive the certificates in good faith and for a valuable consideration and in the ordinary course of business, whether the indicia are true or not. (Beach on Pr. Cor. vol. 2, p. 790; *North River Bank* v. *Aymar*, 3 Hill, 262; *Jarvis* v. *Manhattan Beach Co.*, 53 Hun, 362; *Tome* v. *Parkersburg Branch*, 39 Md. 36; *Baltimore, etc., R. Co.* v. *Wilpens*, 44 id. 28; *Western M. R. Co.* v. *Franklin Bk.*, 60 id. 36; *Com.* v. *Bk.*, 137 Mass. 431; *Holden* v. *Phelps*, 141 id. 456; *Manhattan Beach Co.* v. *Harned*, 27 Fed. Rep. 486; *Shaw* v. *Port Phillip & Co.*, 13 Q. B. Div. 103.)

The rule is, we think, correctly stated in Beach on Private Corporations (Vol. 2, § 488, p. 791): " When certificates of stock contain apparently all the essentials of genuineness a *bona fide* holder thereof has a claim to recognition as a stockholder, if such stock can legally be issued, or to indemnity if this cannot be done. The fact of forgery does not extinguish his right when it has been perpetrated by or at the instance of an officer placed in authority by the corporation, and

entrusted with the custody of its stock books and held out by the company as the source of information upon the subject."

Having reached the conclusion that the defendant is liable for the representations of its officers appearing upon the face of its certificate over their official signature and under the seal of the corporation, we do not deem it necessary to consider the effect of the oral representations made at the office of the company to the plaintiff's clerk, except so far as they bear upon the question of the good faith of the plaintiff in the acquisition of the certificate.

The judgment and order must be affirmed with costs.

All concur.

Judgment affirmed.