HEZEKIAH S. ARCHER, Plaintiff, v. OSCAR M. DUNHAM and THE
    CASSELL PUBLISHING COMPANY, Defendants.

CHARLES C. MURPHY, Respondent; HENRY J. BRAKER, as Receiver
    of THE CASSELL PUBLISHING COMPANY, Appellant.

*Corporation—fraudulent overissue of stock—measure of damages to innocent
holder—claim therefor not defeated by a subsequent surrender and cancellation of
valid stock.*

In case the officers of a corporation, authorized to issue stock certificates, fraudu-
lently issue certificates for shares in excess of the number of shares the corpo-
ration is authorized to issue, the corporation is liable to an innocent holder in
damages for such overissue to the extent of the value of the shares.

In a proceeding instituted by a stockholder of a corporation against the receiver
of a corporation, to recover damages because of the issue to him, by officers of
the corporation authorized to issue stock certificates, of an issue of stock in
excess of the number of shares of stock of the corporation which it was author-
ized to issue, it appeared that, two days prior to the presentation of the claim-
ant's claim, the receiver's agent, the receiver's attorney and two others, per-
sons not officers of the company, met at the office of the company and caused
the secretary of the company to cancel and pin into the stock books of the com-
pany two genuine certificates of stock in such an amount that, had they been
surrendered prior to the issuing of the stock to the claimant, his stock would
not have been an overissue. Such surrender was unknown to the claimant at
the time and was never consented to by him.

*Held,* that the receiver could not cut off the claimant's right to damages for the
fraudulent overissue of stock, perpetrated upon him in March, 1893, by procur-
ing a surrender of shares in October, 1893, without the claimant's consent.

APPEAL by Henry J. Braker, as receiver of The Cassell Publish-
ing Company, from an interlocutory judgment of the Supreme
Court in favor of the claimant, Charles C. Murphy, entered in the
office of the clerk of the county of New York on the 31st day of
December, 1894, upon the report of a referee, and also from an
order entered in said clerk's office on the 11th day of December,
1894, confirming said report.

*Frank H. Platt,* for the appellant.

*Carlton B. Pierce,* for the respondent.

FOLLETT, J.:

January 21, 1890, the Cassell Publishing Company was incorpo-
rated under C. 40, L. 1848, and the laws supplementary thereto

and amendatory thereof, with an authorized capital stock of $350,000, divided into 3,500 shares of the par value of $100 each, for the purpose of printing, publishing and selling books. Oscar M. Dunham has been the president and a director of the corporation ever since its organization. The claimant asserts, and the referee found, that in March, 1893, the corporation, through its president, contracted to sell to him 100 shares of its stock for $10,500. It was also alleged by the claimant, and found by the referee, that the president of the corporation represented that said shares had been issued to a stockholder who had sold them to the corporation. The claimant paid for said shares by four checks, the first, dated March 16, 1893, for $7,500, payable " to the order of O. M. Dunham," which was indorsed by the payee " for deposit," and was subsequently paid and the avails converted by Dunham ; the second, dated March 27, 1893, payable " to the order of O. M. Dunham, Esq., or Cassell Publishing Co.," for $1,000, which was indorsed by the treasurer of the corporation " for deposit to credit of Cassell Publishing Co.," which check was paid and the avails credited to the corporation; the third, dated. April 1, 1893, payable " to the order of O. M. Dunham or Cassell Pub. Co.," for $1,000, which was indorsed by O. M. Dunham " for deposit," and the avails converted by Dunham, which check was paid ; the fourth, dated April 6, 1893, payable " to the order of O. M. Dunham " for $1,000, which was indorsed in blank by O. M. Dunham and by the treasurer of the corporation " for deposit to credit of Cassell Co.," and the avails credited to the corporation. March fifteenth, certificate No. 87 for 100 shares of the stock was issued, which was signed by the president and treasurer of the corporation and sealed with its seal. It is alleged by the claimant, and found by the referee, that these shares were a fraudulent overissue made by the officers of the corporation.

On the 16th of May, 1893, the claimant owned two promissory notes, one for $800, due, without interest, May 21, 1893, and the other for $354, due, without interest, May 29, 1893, which the claimant delivered to the corporation as a loan. These notes were indorsed by the corporation for collection for its account, were paid when due, and the avails credited to the corporation.

June 17, 1893, an action was brought by Hezekiah S. Archer, the vice-president, who was also a director, shareholder and creditor of

the corporation, alleging that it had become insolvent by reason of the fraudulent mismanagement of its affairs by its president, in which a receiver was appointed July 19, 1893, who is now in possession and control of the affairs of the corporation. Pursuant to a notice published by order of the court, the claimant presented his claim, which was rejected, and thereupon the matter was referred to a referee to hear and determine.

The finding of the referee, that the claimant in purchasing the shares dealt with the corporation, and not with Oscar M. Dunham as an individual, is amply supported by the evidence, and, upon reading the record, we are convinced that a finding to the contrary would not have been sustained by this court. All the witnesses agree that the certificate issued to the claimant represented a fraudulent overissue of shares. Section 6 of the by-laws of the corporation provides that "all certificates of stock shall be signed by the president and treasurer." The certificate issued to the claimant was so signed and was authenticated by the seal of the corporation. The fact that the avails of two of the four checks, given by the claimant in payment for the shares, were fraudulently converted by the president to his own use, does not affect the claimant's right or the liability of the corporation.

It is well settled that, in case the officers of a corporation authorized to issue share certificates fraudulently issue certificates for shares in excess of the number of shares the corporation is authorized to issue, the corporation is liable in damages for such overissue to an innocent holder for value of the overissued shares. (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30 ; *Fifth Avenue Bank* v. *F. S. S. & G. S. F. R. R. Co.*, 137 id. 231 ; Cook S. & S. § 293 ; Mor. Corp. [2d ed.] § 186 ; Dos Passos Law of Stock Brokers & Stock Exchange, 641, *et seq.*)

Ten days after the appointment of the receiver, the claimant sailed for Europe. The day before he left, he heard a rumor that his stock was an overissue. On the 1st of September, 1893, he returned to New York and began an investigation in respect to the status of his shares, of which investigation the officers of the corporation, its receiver and his attorney knew. October 21, 1893, the receiver and his attorney procured two genuine certificates for shares [No. 2, issued January 23, 1890, to Oscar M. Dunham, for

250 shares, and No. 47, issued May 19, 1890, to Oscar M. Dunham, for 100 shares] to be in form surrendered and the original certificates annexed to the corresponding stubs in the book from which certificates were cut. This was done for the purpose of reducing the number of shares for which certificates were outstanding to the number which the corporation was authorized to issue. Upon this transaction the learned referee, by his 27th finding of fact, found as follows :

" 27. That two days prior to the tender of stock and presentation of claims, and on the 19th day of October, 1893, the receiver's agent, the receiver's attorney and two other persons not officers of the company, met at the office of the company and caused the secretary of the company to cancel and pin into the stock books of the company two genuine certificates of stock in amount such that had they been surrendered prior to the issuing of the stock to the claimant his stock would not have been an over issue."

Such surrender was unknown to claimant at the time, and has never been consented to by him.

One of the certificates so surrendered was held by the vice-president of the company, individually, as collateral to a loan, and was delivered and directed to be canceled by him, after learning of the overissue, and as an attempt to cure the same.

About this transaction or its purpose there was no dispute, but it was wholly ineffectual for two reasons : (1) There was no evidence that Oscar M. Dunham authorized the surrender and cancellation of the certificates ; (2) the receiver could not cut off the claimant's right to damages for the fraudulent overissue perpetrated upon him in March, 1893, by procuring a surrender of shares of an insolvent corporation in October, 1893, without the claimant's consent. Had the shares been surrendered upon his consent and upon an agreement that he would waive his claim for the fraud perpetrated upon him, or had the number of shares which the corporation was authorized to issue been increased according to law and he had consented to hold the shares previously issued to him as a part of such increase, his claim for damages would have been cut off. The claimant did not consent to the cancellation of these shares, but was at that time actively engaged in prosecuting his claim for damages, which could not be defeated by such an indefensible subterfuge, on the part of

the receiver of the corporation. The claim for money received on account of the notes was not defended on the merits. The corporation received the money, and its receiver is liable to the claimant for the sum received. Receivers appointed by this court should always bear in mind that it is their duty to deal justly by the shareholders and creditors, and not to engage in schemes to defeat or impair the rights of either, and that those who disregard this rule do it at the peril of removal, or, at least, of being personally charged with costs.

The findings of fact, which are amply supported by the evidence, and the conclusions of law, which are supported by the findings, clearly demonstrate that the receiver has no just defense to this claim.

The order and judgment should be affirmed, with costs.

PARKER, J., concurred; VAN BRUNT, P. J., concurred in result.

Order and judgment affirmed, with costs.