(June 5, 1915.)

HORACE M. DAVENPORT, MILTON J. FLOHR, CHARLES W. BETTS, CHARLES F. ASP, CHARLES W. BETTS, Administrator of the Estate of BARRY N. HILLARD, Deceased, WILLIAM M. CLARK, THOMAS KELLY, BEN STANLEY REVETT and JOHN H. WOURMS, Respondents, v. PATRICK BURKE, Appellant.

[149 Pac. 511.]

ASSIGNMENTS OF ERROR NOT DISCUSSED—MOTION FOR JUDGMENT ON PLEADINGS—ISSUE RAISED—ERROR TO GRANT JUDGMENT.

1. Where assignments of error are set out in counsel's brief as prescribed by the rules of this court, but are not discussed either in the brief or upon oral argument, and where no authorities are cited in support of said assignments of error, the same will not be considered or determined by this court.

2. When a party moves for judgment on the pleadings he, not only for the purposes of his motion, admits the truth of all the allegations of his adversary, but must also be deemed to have admitted the untruth of all his own allegations which have been denied by his adversary. (*Walling v. Bown*, 9 Ida. 184, 72 Pac. 960, approved and followed.)

3. A judgment on the pleadings results from the fact that the answer does not put in issue any of the material allegations of the complaint, or where the pleadings show upon their face that

the party is entitled to recover without proof. A judgment on the pleadings is allowable not because of lack of proof, but because of the lack of an issue.

4. Where issues of fact are raised by the pleadings which require evidence to establish before the court can intelligently determine whether such issues are with the plaintiff or defendant, it is error to enter judgment on the pleadings.

5. If but one defense is good, the entire pleading cannot be deemed frivolous or subject to a motion for judgment on the pleadings.

6. Motion for judgment on the pleadings should not be granted unless it clearly appear on the face of the pleadings that there are no material issues raised by the same.

7. *Held,* under the facts in this case that there were material issues raised by the pleadings, and that it was reversible error for the trial court, upon a mere motion, to adjudge and determine the rights of the parties to this litigation without a hearing.

APPEAL from the District Court of the First Judicial District for Shoshone County. Hon. John M. Flynn, Judge.

Action for the cancellation of certain contracts to purchase mining claims, and for the possession thereof; that defendant be enjoined from interfering with plaintiffs' possession. *Reversed.*

James A. Wayne, for Appellant.

When a party moves for a judgment on the pleadings he not only admits the truth of all of the allegations of the answer, but he also admits the untruth of all of the allegations of his complaint which the defendant has by his answer denied. (*Walling v. Bown,* 9 Ida. 184, 72 Pac. 960; *Mills Novelty Co. v. Dunbar,* 11 Ida. 671, 83 Pac. 932; *Idaho Placer Min. Co. v. Green,* 14 Ida. 294, 94 Pac. 161.)

James E. Gyde and John H. Wourms, for Respondents.

Only those things are admitted by motion for judgment on the pleadings which are well pleaded and which are statements of fact and not conclusions of law. Calling a thing a fraud does not necessarily make it so. Where the denials

of an answer are not sufficient to make an issue, the court errs in denying plaintiff's motion for judgment on the pleadings. (*Toledo etc. Scale Co. v. Young,* 16 Ida. 187, 101 Pac. 257.)

BUDGE, J.—This is an action brought in the district court of the first judicial district for Shoshone county, to cancel two certain contracts for the purchase of mining claims here-inafter referred to, and to declare said contracts null and void and not a cloud upon plaintiffs' title, and for the pos-session and right to the possession of said mining claims as against the defendant.

The rulings of the trial court in this case were upon issues of law raised on the pleadings. We have therefore concluded that it will not be necessary to set out in full all of the allegations of the complaint, the denials and affirmative allegations contained in the second amended answer of the defendant to the complaint. To the said amended answer, separate demurrers were filed by the plaintiffs and by the court overruled. Separate demurrers of each of the plaintiffs were filed to the second amended cross-complaint of the defendant and were by the trial court sustained, whereupon the defendant declined to amend his said second amended cross-complaint and the same was dismissed. On May 16, 1915, the plaintiffs moved the court for judgment on the pleadings, to wit, the complaint and the second amended answer, which motion was by the trial court sustained. Judgment was thereupon rendered and entered against the defendant and in favor of the plaintiffs as prayed for in plaintiffs' complaint. This is an appeal from the judgment.

It will not be necessary, for the purpose of disposing of this case, to discuss the action of the trial court in sustaining the separate demurrers of the plaintiffs to the second amended cross-complaint of the defendant, for the reason that counsel has not deemed it necessary to discuss the action of the court in this respect, although assigned as error in his brief. Where assignments of error are made in counsel's brief but not discussed either in the brief or upon oral argument, and where no authorities are cited in support of

the assignment of error, said assignment will not be discussed by this court. (*Idaho Merc. Co. v. Kalanquin*, 8 Ida. 103, 66 Pac. 933; *Farnsworth v. Pepper, ante*, p. 154, 148 Pac. 48.)

We will confine ourselves to a discussion of the second and third assignments of error in appellant's brief, to wit, second, "The court erred in sustaining plaintiffs' motion for a judgment on the pleadings"; third, "The court erred in entering the judgment of dismissal." In order to determine whether the court erred in sustaining the plaintiffs' motion for judgment on the pleadings, and thereafter entering up judgment of dismissal, it becomes necessary to refer briefly to the allegations of the complaint, the denials and affirmative allegations of the answer.

Among other things it is alleged in the complaint of the plaintiffs that on June 3, 1912, the plaintiffs, with the exception of John H. Wourms, were the owners of certain lode mining claims situate, lying and being in Beaver mining district, county of Shoshone, state of Idaho, known as the "Amazon," "Manhattan," "Monitor," "Ajax," "Glenwood," "Staten Island," "New York" and "Merrimac" group of mining claims.

It is alleged that there were two options to purchase the above-named mining claims given to the defendant by the owners thereof, part of whom resided in Wallace, Idaho, and the others in Denver, Colorado. For the purpose of brevity the contracts will be treated and referred to in this opinion as one.

The plaintiffs allege that the consideration to be paid by the defendant under the option to purchase the mining claims referred to was $160,000, which said amount was divided into various sums, the first payment of $16,000 falling due on or before December 3, 1912, which amount the plaintiffs allege the defendant did not pay, and that by reason of his failure so to do plaintiffs brought this action.

The contracts marked exhibits "A" and "B," attached to and made a part of plaintiffs' complaint, among other things, provided: First, that Burke was to have the immediate possession of said property; second, that the deed con-

veying the interest of the plaintiffs to the mining claims was to be placed in the First National Bank at Wallace, Idaho, and the First National Bank of Denver, Colorado, to be delivered to Burke upon the payment of the instalments as they became due under the contract of purchase; third, Burke, under the terms of the contract, agreed to do certain development work; fourth, it was agreed that Burke might extract and ship certain ore from said mining claims; fifth, twenty-five per cent of the net smelting returns from all shipments of ore were to be applied upon the payments; sixth. it was to be provided that all buildings and machinery placed upon the property by Burke should become the property of the owners in the event Burke did not comply with the conditions of the contracts; seventh, it was agreed that Burke should save the owners from any liens, judgments, liabilities or indebtedness of any kind or nature during the life of the agreement; eighth, that time was of the essence of the contracts; ninth, that nothing in the contract should be so construed as to compel Burke to purchase said mining claims or render him liable in damages if he failed so to do, if he finally concluded not to avail himself of the conditions of the contract.

The complaint sets forth that the plaintiffs had performed all of the things prescribed to be performed by them under the provisions of the contract, and at the time of the commencement of the suit Burke had paid $175 on the purchase price. It is further alleged that prior to the commencement of this action the owners of the mining claims involved in this litigation gave to one John H. Wourms, who is made a respondent in this action, an option to purchase these same mining claims; that Wourms had demanded of Burke the possession of said claims, but he had refused to deliver the possession or to pay the balance due on December 3, 1912.

The plaintiffs pray that it be decreed that the defendant had violated the terms and conditions of the agreements and that said contracts be canceled and held for naught, and that the defendants be enjoined from interfering with the possession of the plaintiffs in said mining claims.

To this complaint the defendant Burke filed a second amended answer, in which he admits the signing of the two contracts of the plaintiffs, exhibits "A" and "B," but avers that said contracts were not signed until June 17, 1912; denies that he ever assented to the terms and conditions of said contracts, exhibits "A" and "B," and alleges that in truth and in fact defendant's signature thereto was obtained by and through the false and fraudulent representations of plaintiff Charles W. Betts, who was then and there acting as the agent of all of the plaintiffs, with the exception of Flohr and Wourms, and alleges that his signature to said contracts was obtained in the following manner, and under the following conditions and circumstances, to wit, that on or about September 14, 1911, one William T. Tracy entered into a contract in writing with plaintiffs Davenport, Flohr, Betts, the estate of Barry N. Hillard, and Charles F. Asp, for the purchase of all right, title and interest of the aforesaid parties in and to the mining claims described in the complaint, in which said contract the defendant was named as a party but was not interested and was only known as a nominal party thereto, which contracts with Tracy are set out *in haec verba* in the defendant's second amended answer; that on or about February 13, 1912, Tracy forfeited his contracts and thereupon plaintiffs proposed to the defendant that, if he would assume all the debts incurred by Tracy under his contracts, which amounted to about the sum of $9,000, and would publish in the "Press Times," a newspaper published in the city of Wallace, Shoshone county, Idaho, a notice to the public that he would assume and pay all obligations and fulfill all contracts incurred or entered into by Tracy, the plaintiffs would enter into a contract or contracts with the defendant for the sale to the defendant of the mining claims referred to in the plaintiffs' complaint, for the same consideration as was required to be paid by Tracy, *and would give the defendant the same length of time after the date of said contracts within which to make said payments as had been given to Tracy;* that he accepted said offer and on or about June 17, 1912, was advised by the plaintiff Betts, who

was then acting for himself and as the agent of all of said plaintiffs with the exception of Flohr and Wourms, that contracts drawn in accordance with the oral agreement between plaintiffs and defendant were at the First National Bank of Wallace, Idaho, and ready for defendant's signature; that said Betts then advised the defendant that the contracts were identical in terms with the contracts theretofore made between the plaintiffs and Tracy, except as to the time when payments thereunder were required to be made, which had been modified in accordance with the oral agreement between the plaintiffs and defendant; that thereupon the defendant went with the said Betts to the First National Bank of Wallace, and, without reading the said contracts, exhibits "A" and "B," but relying on the statements, assurances and representations of Betts that said contracts were identical with the Tracy contracts with the exception of the time for payments, signed his name to said contracts.

Defendant alleges that on or about April 2, 1912, he entered into possession of said mining claims pursuant to the terms of the oral agreement entered into between the plaintiffs and the defendant, and not under the terms and conditions of exhibits "A" and "B."

The defendant, for lack of sufficient knowledge or information to enable him to form a belief, denies that the plaintiffs on December 4, 1912, gave an option to Wourms to purchase said mining property, and in like manner denies any knowledge of the existence or conditions of said or any option, and alleges that if said option was given to said Wourms to purchase said mining claims, that said Wourms took said option with full knowledge of the rights claimed by the defendant.

Further answering said complaint, and by way of affirmative defense, the defendant alleges among other things that at the time Tracy forfeited his right under said contracts he, Tracy, had incurred and owed approximately $9,000 for labor, supplies and material furnished to and used by him in prosecuting work under said contracts, which amount the defendant alleges he paid.

The defendant further alleges that he published the notice agreed upon in the ''Press Times,'' published in the city of Wallace; that on or about April 2, 1912, he entered upon said lode mining claims and prosecuted work thereon under said oral contract until he was enjoined in this action, which was on or about December 16, 1912; that in the prosecution of said work upon said mining claims he expended about $30,000.

Defendant alleges that the contracts, exhibits ''A'' and ''B,'' signed by the defendant and attached to and made a part of the plaintiffs' complaint were and are materially and substantially different in terms and conditions from the Tracy contract or the oral contract, among other things, in the following particulars: In the Tracy contract, the right of the holder of said contract to extract ore from said premises was limited only by the following provisions, to wit:

''It is hereby further agreed that the parties of the second part shall have the right to extract and ship any and all ore encountered during the course of development work on said property, provided, however, that the parties of the second part shall deposit to the credit of the parties of the first part at the said First National Bank an amount equal to one-fourth of the smelter returns received from such shipments, which amounts so deposited shall be applied towards the liquidation of the payments as they fall due at the time and in the manner as hereinbefore set forth.''

While in the contract which this defendant alleges he was induced to sign without reading, as herein referred to, there had been inserted the following provision:

''It is hereby further agreed that the party of the second part shall have the right to mine, extract and ship any and all ore encountered during the course of development work on said property, such ore, thus encountered, not lying or contained within the boundaries of the underground workings as the same exist at the time of the execution of this agreement; the intent and meaning of this provision being that new ore bodies must be discovered during the course of development work, lying outside and exterior to the present

boundaries of the underground workings, and from which new ore bodies the party of the second part is hereby given the right to mine, extract and ship ore, during the ordinary course of development work and in the general acceptation of that term, but no right is hereby given or granted to the party of the second part to stope upon new ore bodies, thus encountered, or mine, extract or ship any ore therefrom in any other manner than as herein provided; any ore thus mined, extracted or shipped shall be known as 'Development ore.' "

It is contended by the defendant that by reason of the fact that the contracts, exhibits "A" and "B," signed by him under the facts recited in his second amended answer contained conditions which were in many respects entirely different from the Tracy contract or oral contract under which he went into possession of said mining claims, it was impossible for him to comply with the terms and conditions of exhibits "A" and "B."

It is insisted by the plaintiffs that the defendant went into possession of said mining claims under exhibits "A" and "B," and failed to comply with the provisions of said contract. This is denied by the defendant, who insists that there were no payments due under the contract entered into between him and the plaintiffs at the time of the commencement of this action; that said payment did not fall due until February 19, 1913. While, upon the other hand, the plaintiffs insist that the first payment fell due on December 3, 1912, under exhibits "A" and "B."

It will be observed from reading the complaint and the answer in this case that there are several important issues raised by the pleadings, not only with reference to the date of payments, but the right of the defendant to extract and ship ore encountered during the course of development work on the property, and to apply the proceeds in the payment of royalties and the reduction of the indebtedness. There are issues made by the pleadings which might involve the right, title and interest in and to said mining claims of one or more, if not all of the plaintiffs; to what extent the de-

fendant's right to act under his contract was involved by reason of subsequent contracts given to respondent Wourms, as well as the acceptance of royalties; the possession of the defendant, whether under the contract known as exhibits "A" and "B" or under an oral contract, and the question of whether or not there was a part performance which would relieve the defendant from the provisions of sec. 6007, Rev. Codes; all of which issues were conceded sufficiently well pleaded to withstand the assault of the plaintiffs' separate demurrer filed to the defendant's amended answer.

Sec. 3317, Rev. Codes, provides: "Where a contract, which is required by law to be in writing, is prevented from being put into writing by the fraud of a party thereto, any other party who is by such fraud led to believe that it is in writing, and acts upon such belief to his prejudice, may enforce it against the fraudulent party."

As was held in the case of *Walling v. Bown,* 9 Ida. 184, 72 Pac. 960: "When a party moves for judgment on the pleadings he not only, for the purposes of his motion, admits the truth of all the allegations of his adversary, but must also be deemed to have admitted the untruth of all his own allegations which have been denied by his adversary."

A judgment upon the pleadings results from the fact that the answer does not put in issue any of the material allegations of the complaint, or where the pleadings show upon their face that the party is entitled to recover without proof. In other words, a judgment on the pleadings is allowable, not because of lack of proof, but because of lack of an issue. Where issues of fact are raised by the pleadings, which require evidence to establish before the court could intelligently determine whether such issues are with the plaintiff or defendant, it is error to enter judgment on the pleadings. (*Alspaugh v. Reid,* 6 Ida. 223, 55 Pac. 300; *Coombs v. Collins,* 6 Ida. 536, 57 Pac. 310; *Mills Novelty Co. v. Dunbar,* 11 Ida. 671, 83 Pac. 932.)

In the case of *Hicks v. Lovell,* 64 Cal. 14, 49 Am. Rep. 679, 27 Pac. 942, it was held that, "Judgment on the pleadings is

authorized only where the answer admits or leaves undenied the material facts stated in the complaint.''

In the case of *Johnson v. Manning*, 3 Ida. 352, 29 Pac. 101, it was held: ''When any of the material allegations of the complaint are denied by the answer, it is error to render judgment on the pleadings.'' And in the case of *Swinehart . v. Pocatello Meat & Produce Co.*, 8 Ida. 710, 70 Pac. 1054, the court said: ''Where a material issue of fact is made by the pleadings, judgment on the pleadings constitutes reversible error.''

If any one defense is good, the entire pleading cannot be deemed frivolous or subject to the motion for a judgment on the pleadings; nor does mere vagueness and uncertainty render a pleading subject to such a motion, or the pleading of evidence or legal conclusions. (31 Cyc., pp. 610, 611.) In fact, in some jurisdictions it is reversible error to grant a motion for a judgment on the pleadings, where a demurrer has been overruled. (*McCown v. McSween*, 29 S. C. 130, 7 S. E. 45.)

In the case of *De Courcey v. Cox*, 94 Cal. 669, 30 Pac. .95, the court says: ''We have not overlooked the point made by appellant on the action of the court in granting the motion for judgment on the pleadings on the ground that the complaint did not state facts sufficient to constitute a cause of action, after having overruled a demurrer based on that ground. We think it nothing more serious than an irregularity which it is better to avoid as far as practicable.''

As a general rule, it might be stated that a motion for a judgment on the pleadings should not be granted, unless it clearly and satisfactorily appear to the trial court that there are no material issues raised by the denials in the answer or by the affirmative allegations of the answer. To finally adjudge and determine the rights of litigants upon a mere motion without a hearing or affording a full opportunity to litigate their rights, might result in great injustice being done.

From the pleadings in this case it clearly appears that a contract was entered into between the parties to this action.

That there was a part performance of a contract cannot be denied. Neither can it be gainsaid that the defendant while in possession of the mining claims paid off the indebtedness and expended moneys in prosecuting his work under a contract to the amount of approximately $30,000. The court was not in a position to determine from the pleadings alone whether the false and fraudulent representations made as alleged by the defendant were binding upon one or more or all of the defendants.

Each and every allegation contained in the defendant's answer, whether a denial or an affirmative allegation, for the purposes of the motion for judgment on the pleadings, was admitted to be true by the plaintiffs, and each and every allegation of the plaintiffs' complaint that was denied by the answer was admitted to be untrue by the plaintiffs. The plaintiffs therefore admitted that the defendant entered into an oral contract, the conditions of which were exactly the same as the Tracy contract except as to the date of payments. The plaintiffs admitted the false and fraudulent representations made by the plaintiff Betts, not only in so far as they bound Betts himself, but that he was the agent of the plaintiffs and made said representations for and on behalf of the plaintiffs, whereby they all became bound, and that by reason thereof the defendant was misled as alleged in his second amended answer.

It will not be necessary to call attention to all of the issues raised by the pleadings in this case, or to comment upon the admissions of the plaintiffs, which are deemed to be true, for the purpose of a motion for judgment on the pleadings. Suffice it to say, that there are, in our opinion, material issues raised by the pleadings, and that reversible error was committed by the trial court in sustaining the plaintiffs' motion for a judgment on the pleadings.

The judgment should be reversed and the cause remanded, and it is so ordered. Costs are awarded to appellant.

Sullivan, C. J., and Morgan, J., concur.