(July 2, 1917.)

HORACE M. DAVENPORT, MILTON J. FLOHR, CHARLES W. BETTS, CHARLES F. ASP, CHARLES W. BETTS, Administrator of the Estate of BARRY N. HILLARD, Deceased, WILLIAM M. CLARK, THOMAS KEELY, BEN STANLEY REVETT, JOHN H. WOURMS and CONSOLIDATED INTERSTATE–CALAHAN MINING COMPANY, a Corporation, Respondents, v. PATRICK BURKE, Appellant.

[167 Pac. 481.]

CONFLICT IN EVIDENCE — PRINCIPAL AND AGENT — FRAUD BY AGENT— BENEFITS RETAINED BY PRINCIPAL—CONSTRUCTIVE TRUSTS.

1. In a suit in equity, as well as in an action at law, a finding of fact made by the trial judge, who has had the benefit of observing the demeanor of witnesses upon the stand and of listening to their testimony, will not be disturbed, because of conflict, if the evidence in support of the finding, if uncontradicted, is sufficient to sustain it.

2. The fraud of an agent is within the course of his employment where, in committing it, he is endeavoring to promote his principal's business within the scope of the actual or apparent authority conferred upon him for that purpose.

3.   Acts of fraud by an agent, committed in the course of his employment, are binding on his principal, even though the principal did not in fact know of or authorize their commission.

4.   A principal who retains benefits derived from the fraudulent conduct of his agent is chargeable with the instrumentality employed by the latter in carrying out the fraudulent purpose, and will not be permitted to disclaim responsibility and retain the fruits of the fraudulent transaction.

5.   Constructive trusts are raised by equity for the purpose of working out right and justice, where there was no intention of the trustee to create such a relation.   Where a party obtains the legal title to property by fraud, violation of confidence, or of a fiduciary relation, or in any other unconscientious manner, so that he cannot equitably retain it, because it really belongs to another, equity will impress a constructive trust upon it in favor of the one who in good conscience is entitled to it, and will recognize him as the beneficial owner.

[As to effect of principal's retention of benefit of loan procured by agent without authority, see notes in **Ann. Cas.** 1913E, 1115; **Ann. Cas.** 1916A, 184.]

APPEAL from the District Court of the First Judicial District, for Shoshone County.   Hon. John M. Flynn, Presiding Judge.

Suit to quiet title and for injunction.   Judgment for plaintiffs and cross-defendant.   *Reversed.*

Fred L. Tiffany and Robertson & Miller, for Appellant.

A principal cannot claim the fruits of fraud perpetrated by his agent, whether he knew of the fraud or not, and even when the agent acts within the scope of his authority and is instructed to make no false statements.   (*Nelson v. Title Trust Co.,* 52 Wash. 258, 100 Pac. 730; *Griswold v. Gebbie,* 126 Pa. St. 353, 12 Am. St. 878, 17 Atl. 673; *Salina Merc. Co. v. Stiefel,* 82 Kan. 7–14, 107 Pac. 774; *Freeman v. F. P. Harbaugh Co.,* 114 Minn. 283, 130 N. W. 1110; *Dresher v. Becker,* 88 Neb. 619, 130 N. W. 275; *Reed v. Halloway* (Tex. Civ.), 127 S. W. 1189; 20 Cyc. 85.)

Where a trustee, agent or employee cannot purchase in his behalf as against his principal or *cestui que trust,* he

cannot purchase for a third person. (*Michoud v. Girod,* 4 How. (U. S.) 504, 11 L. ed. 1077.)

James E. Gyde, Frank H. Graves and W. G. Graves, for Respondents.

In a suit of equity, as well as in an action at law, the findings of a trial judge will not be disturbed where there is a conflict in the evidence and the witnesses were produced in court. (*Stuart v. Hauser,* 9 Ida. 53, 72 Pac. 719; *Morrow v. Matthew,* 10 Ida. 423, 79 Pac. 196; *Hufton v. Hufton,* 25 Ida. 96, 136 Pac. 605; *Cameron Lbr. Co. v. Stack-Gibbs Lbr. Co.,* 26 Ida. 626, 144 Pac. 1114; *Darry v. Cox,* 28 Ida. 519, 155 Pac. 660; *Jensen v. Bumgarner,* 28 Ida. 706, 156 Pac. 114; *Wolf v. Eagleson,* 29 Ida. 177, 157 Pac. 1122.)

When an agent undertakes to represent two principals, and their interests conflict in the subject matter of the agency, if both are equally innocent there is no rule of reason or law which permits one principal to be charged with all the consequences of the agent's double dealing, and the other to obtain all the benefits of what the agent did. (*Kennedy v. Green,* 3 Mylne & K. 699, 40 Eng. Reprint, 399; 2 R. C. L. 965; *Benedict v. Arnoux,* 154 N. Y. 715, 49 N. E. 326; *Melms v. Pabst Brg. Co.,* 93 Wis. 153, 57 Am. St. 899, 66 N. W. 518.)

Where there are equal equities, the first in order of time shall prevail. (1 Pomeroy, Eq. Jur., 3d ed., 413.) Where there is equal equity, the law must prevail. (1 Pomeroy Eq. Jur., 3d ed., 417.)

MORGAN, J.—This case has heretofore been before this court upon appeal from a judgment on the pleadings. (*Davenport v. Burke,* 27 Ida. 464, 149 Pac. 511.) That judgment was reversed and the cause remanded for further proceedings. Whereupon appellant, defendant in the court below, applied for and procured an order of the trial court permitting him to file a third amended answer and cross-complaint and to make the Consolidated Interstate-Calahan

Mining Company, a corporation, hereinafter referred to as the mining company, a party. The answer and cross-complaint was filed and the plaintiffs and the mining company jointly answered the cross-complaint. Upon the issues framed by the complaint, the substance of which will be found in the opinion in *Davenport v. Burke, supra,* the third amended answer and cross-complaint and the answer to the cross-complaint, a trial was had before the court without a jury, which resulted in judgment for the plaintiffs and the mining company, from which the defendant has appealed.

In June, 1912, and prior thereto, Horace M. Davenport, Milton J. Flohr, Charles W. Betts, Charles F. Asp, William M. Clark, Thomas Keely, Ben Stanley Revett and the estate of Barry N. Hillard, deceased, of which Charles W. Betts was administrator, hereinafter referred to as the original owners, owned certain mining claims located in Shoshone county, title to which is the subject of this action.

Some time prior to June, 1912, negotiations were entered into between appellant and these original owners which resulted in a contract being executed, dated June 3, 1912, whereby appellant procured an option to purchase the mining claims for the sum of $160,000. This contract, for the purpose of convenience, was expressed in two papers. One providing for the payment of $115,000 to certain of the owners, the other of $45,000 to certain others, and by the terms thereof $16,000 was to be due and payable on or before December 3, 1912, $32,000 on or before April 3, 1913, $32,000 on or before October 3, 1913, and $80,000 on or before April 3, 1914. By the terms of the contract appellant was to be let into immediate possession of the property; however, it appears from the record, as a matter of fact, he was already in possession and had been for sometime prior to its execution. It was further provided that appellant should have the right to mine, extract and ship such ore as was encountered during the course of development work, not lying or contained within the boundaries of the underground works as the same existed at the time of the execution of the agreement, but that no right was given him to stope upon the ore bodies

discovered, or thereafter to be discovered. Time was made the essence of the agreement, and it was provided that if appellant should fail to make the payments or any of them when due, the contract should be void and the amounts theretofore paid should be retained by the original owners and that appellant's right to possession of the property should cease.

On the 4th day of December, 1912, appellant having failed to fully make the first payment, the owners declared his rights forfeited and entered into a contract with respondent, John H. Wourms, similar in all important particulars to that theretofore entered into with appellant, except that the first payment of $16,000 was made immediately upon the signing of the agreement and the subsequent payments were to be made on or before the 3d day of August, 1913, the 3d day of December, 1913, and the 3d day of June, 1914, respectively. The first payment, as well as those subsequently falling due, was made by Wourms with money furnished him for that purpose by the mining company. The original owners conveyed title to the property by deed to Wourms and he, subsequently, deeded it to the mining company.

Appellant's assignments of error, which are numerous, will not be separately discussed. He makes two principal contentions, a consideration of which, we believe, will be decisive of this case:

(1) That it was orally agreed between himself and the original owners that the date of his first payment should be February 19, 1913, and that he was to be permitted to extract and ship ore from the mine other than in the course of development work; that through a fraud, perpetrated upon him by and on behalf of the original owners, the date of his first payment was expressed in the written contract as December 3, 1912, and he was prohibited from extracting and shipping any ore, except that necessary to be removed in legitimately exploring and developing the mine.

(2) That Wourms, who was his attorney, regularly employed to safeguard his interests under the contract, acting for and in collusion with the mining company, defrauded and

misled him into allowing his rights to be forfeited and then, in hostility to him, purchased the property.

It may be said, with respect to appellant's contention first above stated, that the trial court found the facts against him and, while there is sharp conflict in the evidence upon that point, we are governed by a well-established rule to the effect that in a suit in equity, as well as in an action at law, a finding of fact made by the trial judge, who has had the benefit of observing the demeanor of witnesses upon the stand and of listening to their testimony, will not be disturbed, because of conflict if the evidence in support of the finding, if uncontradicted, is sufficient to sustain it. (*Stuart v. Hauser,* 9 Ida. 53, 72 Pac. 719; *Morrow v. Matthew,* 10 Ida. 423, 79 Pac. 196; *Hufton v. Hufton,* 25 Ida. 96, 136 Pac. 605; *Cameron Lbr. Co. v. Stack-Gibbs Lbr. Co.,* 26 Ida. 626, 144 Pac. 1114; *Darry v. Cox,* 28 Ida. 519, 155 Pac. 660; *Jensen v. Bumgarner,* 28 Ida. 706, 156 Pac. 114; *Wolf v. Eagleson,* 29 Ida. 177, 157 Pac. 1122.) Applying this rule, an examination of the record discloses that there is sufficient evidence to sustain the action of the trial judge in finding, as a fact, that the terms and conditions of the oral agreement between the parties were incorporated in the written contract.

Upon the second point, the trial judge found that respondent, Wourms, was, in the year 1912, and had been for some time prior thereto, a practicing attorney at law in the state of Idaho and was well known to and upon friendly terms with appellant; that on or about the 18th day of November, 1912, appellant went from Wallace, Idaho, to Spokane, Washington, for the purpose of employing an attorney to represent him in the controversy between himself and the original owners with reference to the contract, as before stated; that after his arrival in Spokane he was approached by Wourms, to whom he stated what his business there was and the claims he was making in regard to the terms of the contract and his rights thereunder; that upon his stating the fact that he was in Spokane for the purpose of securing an attorney, Wourms told him that he and appellant had always been friends and that he could and would represent him in securing the rights

he claimed; that appellant then fully disclosed the claims he was making with reference to his rights as against the original owners and made a full and complete statement of all the alleged terms of the contract; that he thereupon employed Wourms to act as his attorney in the matter and paid him a retaining fee and Wourms accepted the employment and the fee and undertook to act as appellant's attorney; that on November 19, 1912, Wourms wrote a letter to the Graeselli Chemical Company of Park City, Utah, stating that appellant had employed him as his attorney to straighten out his affairs, and wherein he asked for a copy of a letter sent to appellant by that company and which appellant claimed had been intercepted by respondent, Betts; that on the 23d day of November, 1912, Wourms, as appellant's attorney, prepared a notice to the original owners, which was transmitted to them, wherein he demanded a bond or option to purchase the mining property on the terms and conditions agreed upon between them during their negotiations prior to the 3d day of June, 1912, and stating that unless they complied with his demand within fifteen days from the date of the notice he would institute suit for specific performance and for damages sustained by him through their failure to live up to the agreement; that appellant had several conversations and consultations with Wourms at different times with reference to his claims under the contract; that on about the 16th day of December, 1912, Wourms informed appellant that he had been, for a long period of time prior thereto, in the employ of the mining company, that the company was desirous of purchasing the property in question and that he, Wourms, would have to represent the mining company with relation to the purchase and could not further represent appellant in the matter.

In view of this finding of facts, which is based upon uncontradicted evidence, the conclusions of law and judgment in this case are erroneous.

The trial judge further found, as a fact, that Wourms had been attorney for the mining company for more than one year prior to November, 1912, and that at no time during these

transactions did it have any knowledge or notice of the relations between Wourms and appellant, but supposed that Wourms was acting as its counsel in relation to the proposed purchase of the property unembarrassed by any conflicting professional engagements.

The evidence tending to support the finding that the mining company had no notice that Wourms was acting as attorney for appellant consists of the testimony ·of its then general manager who stated he had no information of the fact and did not suspect, at the time Wourms was acting for the mining company in negotiating for the option, that he had any professional relation with appellant, and the first time he knew of it was in the courtroom while the case was on trial.

Whether this testimony is sufficient to sustain the finding that the mining company had no notice of the relation of attorney and client existing between appellant and Wourms, other than that derived from the knowledge of Wourms, we do not deem it necessary to decide.

The uncontradicted evidence shows that Wourms prevailed upon appellant, who was uneducated, never having gone to school a day in his life, and signed his name for the first time after he was thirty years old, and was, because of his lack of skill and learning, greatly in need of the services of a conscientious and competent attorney, to not employ counsel other than himself; that during all, or almost all, the time he was so employed he was negotiating with the original owners for the purchase, in his own name, of the mining claims upon which appellant had a valid written contract or option, which, by its terms, would expire on December 3, 1912; that on November 23, 1912, he advised and procured appellant to issue a notice to the original owners granting them fifteen days within which to conform to the agreements it was contended they had made with him, well knowing that, before the expiration of that time, the written option to purchase would expire, thus permitting him to avail himself of the negotiations he was making with the owners for the purchase of the property by himself for the mining company.

That in procuring this title, with the mining company's money and for its use and benefit, Wourms acted as its agent cannot be doubted; that he was directed by his principal late in November or early in December, 1912, to procure the title for it is made manifest by the record, and that while so doing, and acting within the scope of his agency, he defrauded appellant, lulled his mind into a sense of confidence and repose, and, to the end that the fraud might be perpetrated, caused him to permit his option to expire without seeking the guidance of other counsel or otherwise protecting himself is equally clear. "It may be stated broadly that the tort of an agent is within the course of his employment where the agent in performing it is endeavoring to promote his principal's business within the scope of the actual or apparent authority conferred upon him for that purpose." (2 C. J. 853.)

A rule of law, applicable to this case, is correctly stated in 2 C. J. 849, as follows: "Acts of fraud by the agent, committed in the course or scope of his employment, are also binding on the principal, even though the principal did not in fact know of or authorize the commission of the fraudulent acts. . . . . " (See, also, *Bank of Commerce v. Hoeber,* 88 Mo. 37, 57 Am. Rep. 359; *Haskell v. Starbird,* 152 Mass. 117, 23 Am. St. 808, 25 N. E. 14; *Fifth Avenue Bank v. Forty-second St. etc. Ry. Co.,* 137 N. Y. 231, 33 Am. St. 712, 19 L. R. A. 331.)

In the case last above cited, the court, quoting from Story on Agency, 9th ed., sec. 452, states the rule as follows:

"The principal is to be 'held liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, torts, negligences, and other malfeasances, or misfeasances, and omissions of duty, of his agent in the course of his employment, although the principal did not authorize, or justify, or participate in, or, indeed, know of such misconduct, or even if he forbade the acts, or disapproved of them.' "

The supreme court of Nebraska, in case of *Dresher v. Becker,* 88 Neb. 619, 130 N. W. 275, said: "A principal who

retains benefits derived from the fraudulent conduct of his agent is chargeable with the instrumentality employed by the latter in carrying out the fraudulent purpose.'' He will not be permitted to disclaim responsibility and retain the benefits of the fraudulent transaction. (*Nelson v. Title & Trust Co.*, 52 Wash. 258, 100 Pac. 730; *Western Mfg. Co. v. Cotton & Long*, 126 Ky. 749, 104 S. W. 758, 12 L. R. A., N. S., 427; *Rhoda v. Annis*, 75 Me. 17, 46 Am. Rep. 354; *D. Sullivan Co. v. Ramsey* (Tex. Civ.), 155 S. W. 580.)

The supreme court of Oregon, in *Clough v. Dawson*, 69 Or. 52, 138 Pac. 233, quoting from 1 Pom. Eq. Jur., 3d ed., sec. 155, points the way to a remedy in this case, as follows: .

''Constructive trusts are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such a relation, and often directly contrary to the intention of the one holding the legal title. . . . . If one party obtains the legal title to property, not only by fraud or by violation of confidence or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner.''

The judgment is reversed with directions to the trial court to vacate and set aside the injunction heretofore issued and to enter a decree: 1. Awarding immediate possession of the lands and premises described in the complaint and in the third amended answer and cross-complaint, together with the appurtenances thereunto belonging, to the appellant; 2. Fixing a reasonable time, to commence to run upon appellant being placed in full possession of the property, within which he shall pay to the clerk of the district court, for the use and benefit of the mining company, the sum of $160,000 less the sum of $175, which latter amount the trial court found he has heretofore paid to the original owners upon his contract of option to purchase; 3. Requiring Consolidated Interstate-

Calahan Mining Company, a corporation, upon payment to it, or to the clerk of the district court for its use and benefit, the sum of $160,000, less the sum of $175, to make, execute and deliver to the clerk of the court a deed conveying the full title to the lands and premises described in the complaint and in the third amended answer and cross-complaint, together with the appurtenances thereunto belonging to appellant, and that should said company fail or refuse to make such deed, then the trial court shall appoint a commission to make a good and sufficient deed so conveying said property.

Costs are awarded to appellant.

Budge, C. J., and Rice, J., concur.

Petition for rehearing denied.