(March 3, 1922.)

FRED L. VIEL, Appellant, v. HARRY L. SUMMERS, Respondent.

[00 Pac. 000.]

ELECTIONS—CONTEST—INSPECTION OF BALLOTS—EVIDENCE.

    1. In an election contest in order to introduce the ballots of a precinct in evidence, it must be shown by the party offering them that the law governing the protection and preservation of such ballots has been substantially complied with.

Argument for Appellant.

2. Upon the introduction of ballots in evidence in an election contest they become the best evidence of the number of votes cast and for whom cast, unless it appears, from all the evidence, that, since they were placed in the ballot-box by the officers of the election, they have been altered, or that a substitution has been made for the ballots or a portion thereof, and that at the time they were admitted in evidence they were not in the same condition as when they were cast by the voters and counted by the election officers.

3. Upon an examination of the evidence in this case, it is held that the ballots are the best evidence, and that the evidence is not sufficient to sustain the finding of the trial court to the effect that during the time the ballots were in the constructive possession of one of the election judges they were changed and tampered with to an extent that makes them unreliable as evidence, and that they do not express the intention of the voters of said precinct and have no probative force.

APPEAL from the District Court of the Sixth Judicial District, for Lemhi County. Hon. Ralph W. Adair, Judge.

Action to contest election of county commissioner of Lemhi county. Judgment for contestee. *Reversed.*

J. T. Pence and John H. Padgham, for Appellant.

The ballot-box of Junction precinct having been proved to be safely kept, and in the same condition as when the ballots were placed in the box, the box locked and placed in the possession of the deputy sheriff, should have been admitted in evidence. The election judges should not be permitted, either innocently or otherwise, to disfranchise electors, or count their ballots otherwise than as cast by them. The provisions of the statute as to the safekeeping of the ballots after election are directory. (*Newhouse v. Alexander*, 27 Okl. 46, Ann. Cas. 1912B, 674, 110 Pac. 1121, 30 L. R. A., N. S., 602;

Publisher's Note.

2. Ballots as admissible in evidence to impeach election returns, see notes in 11 Am. St. 798; Ann. Cas. 1912B, 682; Ann. Cas. 1916B, 490.

*McCarthy v. Wilson,* 146 Cal. 323, 82 Pac. 243; *Averyt v. Williams,* 8 Ariz. 355, 76 Pac. 463; *Hartman v. Young,* 17 Or. 150, 11 Am. St. 787, 20 Pac. 17, 2 L. R. A. 596; *Murphy v. Lentz,* 131 Iowa, 328, 108 N. W. 530; 9 R. C. L. 1165, par. 153.)

The ballots of Depot precinct were properly admitted in evidence. The burden of showing that they had been tampered with, or changed, shifted to and rested upon the contestee. (*Tebbe v. Smith,* 108 Cal. 101, 49 Am. St. 68, 41 Pac. 454, 29 L. R. A. 673; *People v. Holden,* 28 Cal. 123; *McMenomy v. Ruch,* 142 Cal. 77, 75 Pac. 661.)

The ballots of Depot precinct having been identified and regularly admitted in evidence, were the best evidence and controlling, there being no evidence that they had been tampered with. (*Dorey v. Lynn,* 31 Kan. 758, 3 Pac. 557; *Schneider v. Bray,* 22 Nev. 272, 39 Pac. 326; *State v. Thornburg,* 177 Ind. 178, 97 N. E. 534; 20 C. J. 251, sec. 349, and notes 82, 91, 93; *Cole v. Plowhead,* 31 Ida. 288, 170 Pac. 732; *Coglan v. Beard,* 67 Cal. 303, 7 Pac. 738; *Reynolds v. State,* 61 Ind. 392; *Albert v. Twohig,* 35 Neb. 563, 53 N. W. 582; *Davis v. Grunig,* 143 Cal. 336, 76 Pac. 1102.)

Provisions in the election laws, as to time and place of holding elections, the qualifications of voters, and such others as are expressly made essential prerequisites to the validity of an election, are held mandatory; all others are directory. (*Russell v. McDowell,* 83 Cal. 70, 77, 23 Pac. 183; *People v. City of Los Angeles,* 133 Cal. 338, 65 Pac. 749.)

E. W. Whitcomb, for Respondent.

The ballot-box in Junction precinct was not properly kept after election and no verity could be attached to the ballots. (*Farrell v. Larsen,* 26 Utah, 283, 73 Pac. 227, and cases cited; *Hughes v. Holman,* 23 Or. 481, 32 Pac. 298; *Powell v. Holman,* 50 Ark. 85, 6 S. W. 505; *Kindel v. Lebert,* 23 Colo. 385, 58 Am. St. 234, 48 Pac. 641; *Dennis v. Caughlin,* 23 Nev. 188, 44 Pac. 818; *Rhode v. Steinmetz,* 25 Colo. 308, 55 Pac. 814; *Quigley v. Phelps,* 74 Wash. 73, Ann. Cas.

1915A, 679, 132 Pac. 738; *Fishback v. Bramel,* 6 Wyo. 293, 44 Pac. 840; C. S., sec. 626; McCrary, Elections, secs. 471, 473; Cooley, Const. Limitations, 7th ed., p. 941.)

The ballot-box in Depot precinct should not have been admitted in evidence. (*Stokely v. Burke,* 130 Tenn. 219, Ann. Cas. 1916B, 488, 169 S. W. 763; *Quigley v. Phelps, supra; Huffaker v. Edgington,* 30 Ida. 179, 163 Pac. 793.)

An admission of the ballots of Depot precinct in evidence does not necessarily make them the best evidence. (*Graham v. Peters,* 248 Ill. 50, 93 N. E. 315; *Hartman v. Young,* 17 Or. 150, 11 Am. St. 787, 20 Pac. 17, 2 L. R. A. 596; *Jeter v. Headley,* 186 Ill. 34, 57 N. E. 784; *West v. Sloan,* 238 Ill. 330, 87 N. E. 323; *Howser v. Pepper,* 8 N. D. 484, 79 N. W. 1018; *People v. Livingston,* 79 N. Y. 279; *Chatham v. Mansfield,* 1 Cal. App. 298, 82 Pac. 343; *Tebbe v. Smith,* 108 Cal. 101, 49 Am. St. 68, 41 Pac. 454, 29 L. R. A. 673.)

The delivery of the ballot-boxes to the sheriff of Lemhi county was unlawful and contrary to the provisions of sec. 626, C. S. (*Davies v. Board of County Commrs.,* 26 Ida. 450, 143 Pac. 945.)

RICE, C. J.—Appellant and respondent were Democratic and Republican candidates respectively for the office of county commissioner of Lemhi county at the election in 1920. On the face of the returns respondent had a majority of twenty-five votes, and was given the certificate of election. Appellant brought this contest on the ground that the said election returns were false, in that through the malconduct of the judges of election certain votes in Depot, Junction and Iron Creek precincts of said county which were cast for him were unlawfully counted for respondent, and that such votes were sufficient in number to give him the election.

On the argument in this court counsel for appellant abandoned the contest so far as Iron Creek and Junction precincts are concerned.

The case was tried before the court without a jury, and the ballot-boxes from said precincts were brought into court,

opened and the ballots examined by the court. The court found that while the ballot-boxes in said Depot precinct "were in the constructive possession of one of the election judges for over four months, the same were not in his actual possession for much of said time, and that while in his custody, they were exposed to the reach of unauthorized persons, and that during said time they were changed and tampered with to an extent that makes them unreliable as evidence and they do not express the intentions of the voters of said Depot precinct; and have no probative force." It was also found that the office where the ballot-box was kept was on the ground floor of the principal street of said city of Salmon; that said ballot-box was unsealed and reasonable opportunity given for the tampering with said ballot-box and the votes therein; that after said ballot-box was taken into the custody of the sheriff it was placed in a vault in the sheriff's office, the door of which remained unlocked for the larger part of the time, and ofttimes there was no person in charge of the office when people frequently went there to transact business with the sheriff; that heavy election bets were depending on the outcome of this case; that said ballot-box was locked with a flimsy common padlock and had a slit in the top of considerable size.

Judgment was rendered for the contestee, who is respondent here, and the contestant appealed. He assigns errors in part as follows:

1. The court erred in admitting in evidence the statements of the election officers as to the manner of counting the ballots, and for the purpose of bolstering up their returns of election in the Depot precinct, as the ballots themselves were and are the best evidence of the number of votes cast at the said election.

2. The court erred in admitting in evidence, over the objections of the contestant, the returns of election in the Depot precinct for the purpose of showing that the vote was other than is shown by the ballots themselves in the said precinct, the ballots having been shown to have been safely

kept, and in the same condition as when locked in the ballot-box the night of the election and placed in the possession of one of the judges of the election.

3. The court erred in finding that "heavy election bets were depending upon the outcome of this case," as the evidence does not support such finding.

4. The court erred in finding that "while these ballots of Depot precinct were in the constructive possession of one of the election judges for over four months, the same were not in his actual possession for much of said time, and that while in his custody, they were exposed to the reach of unauthorized persons, and that during said time they were changed and tampered with to an extent that makes them unreliable as evidence and they do not express the intentions of the voters of said Depot precinct; and have no probative force."

5. The court erred in finding that "the positive testimony of the election officials constitutes the best evidence as to the intentions of the voters of said Depot precinct, and an inspection of the ballots shows that at the time of their examination by the court, they were not in the same condition as when cast by the voters, there being a difference between the count made by the court and the election judges respectively of fifty-four votes, and no evidence of fraud on the part of the election officers. It is further found that on the counting of the votes for other candidates other than that for commissioner of the first district, that the votes practically correspond with the returns made by the election judges."

6. The court erred in finding that "the contestant has failed to prove the specific charges in his complaint."

7. The court erred in making finding VIII to the effect that the contestee received 1,057 votes and the contestant received 1,032 votes at said election, the said finding being contrary to the evidence and the conclusion that the said contestee was elected was and is erroneous and contrary to law and the evidence in the case.

The appellant also assigns as error the making of the conclusions of law that the returns of the officers at said election

in the various precincts of Lemhi county constitute the best evidence as to the number of votes received by appellant and respondent; that respondent was duly elected a commissioner of said county at the election held in November, 1920, and is entitled to hold said office.

The evidence shows without dispute that early on the morning following the election the ballot-box containing the ballots cast in Depot precinct was locked and taken by Percy Anderson, one of the counting judges, and John C. Dryer, one of the election judges of said precinct, to the office of said Dryer in Salmon, the county seat of said county; that said ballot-box was left in the front room of said office for a brief time and was then placed in the back room of said office, where it remained until some time after this suit was brought; that there is a back door to the room where said ballot-box was kept, which was usually kept locked; that a curtain hangs over the opening between the front and back rooms of said office building; that the front door of said office building is locked at night but is usually unlocked during the day time and that frequently the proprietor is away for a considerable length of time with no one left in charge.

This action was commenced November 26, 1920, and on February 24, 1921, on motion of appellant, the district judge of said district made an order directing the sheriff of Lemhi county to take into his custody and safely keep said ballot-box until the next regular term of court, which was to begin March 31, 1921. C. S., sec. 7291, provides for such an order. In obedience to said order the sheriff took said ballot-box from Mr. Dryer and kept it in his custody until it was brought into court.

While it will not be necessary to review at length all of the assignments of error, it will be well to discuss briefly several of them, particularly those that affect the value of ballots as evidence. The testimony of the election officers was properly admitted, not for the purpose of bolstering up the returns of election in Depot precinct, but for the purpose

of enlightening the court as to the manner in which the election was conducted and the count of the ballots made, in order that the court from this and all other evidence introduced might determine whether or not the ballots were miscounted as claimed by appellant. So far as the second assignment is concerned it is sufficient to say that appellant introduced the election returns from Depot precinct and therefore he has no right to complain thereof.

The finding of the court that heavy election bets were depending on the outcome of this case is wholly without the support of competent evidence. Nothing appears in the record to support this finding except the testimony of some witnesses that they had heard of bets being made on the contest between the parties to this action, but there is no showing that such bets, even if they were made, have any connection whatever with this action.

So, also, is the finding that the office where the ballot-box was kept was "on the ground floor on the principal street of said city of Salmon" entirely without evidence to support it.

It is the contention of appellant that the ballots cast in Depot precinct came into court in exactly the same condition as they were when they were cast by the voters and counted at the election in said precinct. If this is true, unquestionably such ballots afford the very best evidence that can be had as to how the voters of that precinct voted. While the evidence does not show that the ballot-box of said precinct received the greatest possible care from the day after the election until it was turned over to the sheriff, we are inclined to the view that the care shown may be considered a reasonable and substantial compliance with the law governing this matter. Though the situation in and about Mr. Dryer's office was such that persons so disposed might have opened this box, there is no direct testimony that it was opened; that anybody ever attempted to open it, or even that any person other than Mr. Dryer was ever in the office from the time that the ballot-box was placed there until it

was taken by the sheriff. The evidence does not show just what care it had further than that it was in the back room, which was not really a part of his office. It might have been covered up or hidden away there so that no one entering that room would discover, without search, that the ballot-box was there. It is true that the box was not sealed and that there is a slit in the top of it four and three-fourths inches long, and three-eighths of an inch wide. While this aperture should have been sealed up, we do not think the failure to comply with this provision of the election law would necessitate the conclusion that the ballots were thereby discredited. The same may be said as to the care of the ballots after they were passed into the hands of the sheriff. He appears to have exercised reasonable care and there is no probability, so far as the record shows, that they were tampered with while they were in his custody.

It has been held that in order to destroy the value of ballots as evidence something more must be shown than that there is a possibility that they might have been altered. (*Tebbe v. Smith,* 108 Cal. 101, 49 Am. St. 68, 41 Pac. 454, 29 L. R. A. 673; *Averyt v. Williams,* 8 Ariz. 355, 76 Pac. 463; *Wheeler v. Lawrence,* 78 Kan. 878, 99 Pac. 228; *Hudson v. Solomon,* 19 Kan. 177.)

"So much depends upon the terms of the particular statute to be construed, that it is impossible to lay down a general rule applicable to all cases; but the better opinion seems to be that if the deviation from the statutory requirements relative to the manner of preserving the ballots has been such as necessarily to expose them to the public or unauthorized persons, the court should exclude them; but if the deviations have been slight, or of such a character as not necessarily to render doubtful the identity of the ballots, the question of their identity may well go to the jury to be determined upon all the evidence." (McCrary on Elections, 4th ed., sec. 473, p. 347.)

"Although the general rule is that the ballots themselves are the best evidence of the number of votes cast, and for

whom cast, yet this rule can have no application to a case where the ballots have been tampered with after they were deposited in the ballot-box. In such a case the value of the ballots as evidence is almost totally destroyed, and the returns made by the officers of election presiding at the polls may become better evidence than the ballots." (McCrary on Elections, 4th ed., sec. 474, p. 348.)

There is no direct evidence in the record tending to show that any alteration whatever was made in these ballots from the time they were placed in the box at the election to the time when the box was opened in court. There is evidence, however, which, if true, would lead to the conclusion that the ballot-box had been opened in some unauthorized manner and some of the ballots changed during that time, and it must be upon this evidence mainly that the court based the finding that the ballots, when opened in court, were not in the same condition as when cast by the voters.

Percy Anderson, one of the counting judges, testified that when the ballots were counted by him and the other counting judges there were at least twenty-five ballots marked with a cross at the head of the Republican ticket, a cross after the name of appellant Viel, and the name of respondent Summers not stricken out.

This statement is not specifically corroborated by the other counting judges, neither is it disputed. Mrs. Cecil Mulkey, one of the counting judges, in answer to the question as to whether there were "quite a number of such ballots," answered, "Yes, I would say a number." Only two of such ballots are found in the exhibits certified to this court.

The testimony of witness Anderson is not of a character to seriously impeach the veracity of the ballots. Upon direct examination he testified that at least twenty-five ballots were marked with a cross at the head of the Republican ticket, and a cross put opposite the name of Viel, with the name of Summers scratched out. Upon cross-examination he testified that there were at least twenty-five ballots marked with a cross in the circle at the head of the Republican ticket, and also

marked with a cross after the name of contestant Viel, the name of Summers not being crossed or scratched. He testified that his recollection of the matter was due to the fact that the day following the election he had had a conversation about the condition of the ballots generally, not particularly with reference to Mr. Viel and Mr. Summers.

The ballots of this precinct have been certified to this court as an exhibit. An inspection of them discloses that there were fifty or more so-called mixed ballots on which a cross was placed after the name of Viel, the name of Summers not being scratched, but which were not marked in the circle at the head of the Republican ticket. These ballots may have attracted Mr. Anderson's attention. Of the ballots certified to this court, only fifty-six are marked with a cross in the circle at the head of the Republican ticket. Of these, thirty-two were straight Republican ballots marked with a cross in the circle at the head of the ticket. There is not a single erasure. In order for the testimony of Mr. Anderson to be true, it would have been necessary for someone to have opened the ballot-box, abstracted a number of the ballots and substituted others in their place. It would have been necessary to obtain the official stamp and other official ballots, and re-mark the substituted ballots. The ballots certified to this court have been carefully examined. They do not show the slightest evidence of having been tampered with. They bear on their face the evidence of their integrity. While it is possible that the change could have been made, the evidence in this case is not sufficient to sustain the trial court in finding that during the time the ballots were in the possession of one of the election judges they were changed and tampered with and made unreliable as evidence.

We think the ballots are unquestionably the best evidence in this case. So accepting them, the judgment must be reversed, with directions to enter judgment in favor of appellant. Costs awarded to appellant.

Budge and McCarthy, JJ., concur.

DUNN, J., Dissenting.—I dissent. I would not, however, burden the record with even a brief opinion in this case were it not for the fact that it seems to me the majority opinion plainly and without apparent reason violates a fundamental and well-established principle governing the decision of cases in this court, that is, if we have reached the point where we can say that a principle expressly enunciated no less than forty times has become well established.

In his complaint the contestant charges that the judges of election in Depot precinct by malconduct wrongfully and unlawfully counted for the contestee at least twenty votes that were cast for the contestant by marking the Republican ticket with a cross in the circle at the top and a cross after the contestant's name, the name of the contestee not having been stricken out, and that said judges by malconduct wrongfully and unlawfully counted for the contestee at least twenty votes that were cast for the contestant by simply marking a cross after the contestant's name. If the trial judge had held the contestant to the general rule that the ballot-box of a precinct should not be opened until there had first been offered some evidence tending to substantiate the charges of the complaint, the contestant would not have been able to put in evidence the ballots of Depot precinct, for in the entire record there is not a word of evidence to sustain these sweeping charges of corruption on the part of the election officers. Not only is evidence wholly lacking to sustain these charges, but the judges who counted the ballots of that precinct, Mrs. Cecil Mulkey, Mrs. Clover Edwards and Percy Anderson, testified minutely as to the method of counting the ballots, and that no votes cast for the contestant were counted for the contestee. Besides this, the record conclusively shows that all such ballots in said precinct as the contestant alleged in his complaint to have been counted for the contestee were counted for the contestant.

The majority opinion states that Anderson upon direct examination testified that at least twenty-five ballots were

35 Idaho—13

marked with a cross at the head of the Republican ticket and a cross opposite the name of Viel with the name of Summers scratched out, and that upon cross-examination he testified that there were at least twenty-five ballots marked with a cross in the circle at the head of the Republican ticket, and also marked with a cross after the name of the contestant Viel, the name of Summers not being crossed or scratched. This statement is correct. But if the purpose of making it be to make it appear that the testimony of Anderson is contradictory, then I submit that an examination of the record shows that there was no such contradiction and that counsel for appellant understood both of those statements of Anderson to refer to ballots not having the name of Summers scratched out. Judge Quarles, who was one of counsel for appellant on the trial of this case below, cross-examined Anderson in part as follows:

"Q. I show you a ballot marked 197, being a ballot wherein a cross was placed in a circle at the top of the Republican ticket, and a cross was placed after the name of the contestant, Fred L. Viel, I believe you stated in answer to a question asked by Mr. Whitcomb, that there were at least twenty-five of such ballots cast?

"A. At least twenty-five.

"Q. How do you fix that number?

"A. By memory, and mentioning it; the question was fresh in my mind on account of the discussion the next day as to the legality of counting them. It was a matter that was discussed, not in connection with the commissioner of the first district but in a general way with the judges that the intent of the voter was shown and if we had insisted that the name would be stricken out at least there would be a small tally sheet included in the returns of the entire vote.

"Q. Well, will you say that condition existed with reference to this particular office or that there were at least twenty-five ballots with which this happened with reference to some candidates?

"A. I am speaking in the case of Fred L. Viel and Summers."

This shows conclusively that Judge Quarles understood all of this testimony of Anderson to refer to ballots on which the name of Summers had not been stricken out.

Only two of the ballots marked with a cross at the head of the Republican ticket and a cross after Viel's name, without the name of Summers scratched out, were found by the court on an examination of the ballots. If Anderson's sworn statement is true, there must have been some change made in the ballots after they were locked up in the ballot-box. The majority opinion admits that such a change was possible and points out the manner in which it may have been made, but holds that it was not made, notwithstanding the testimony of Anderson, because "The ballots certified to this court have been carefully examined. They do not show the slightest evidence of having been tampered with. They bear on their face the evidence of their integrity. While it is possible that the change could have been made, the evidence in this case is not sufficient to sustain the trial court in finding" that such change was made

The law as laid down by this court is that when the evidence is conflicting and there is substantial evidence to support the findings of a trial judge, such findings will be sustained by this court. Let us see what the reasoning of the majority would lead to if the fraud charged in this case were committed in the manner by the majority admitted to be possible, that is, by substitution. If enough of the genuine ballots had been taken out and other ballots, properly marked to give the contestant the number of votes required, substituted, would this court expect to find on the face of such substituted ballots evidence of the fraud? Would they not naturally expect that such substitution would be done in a way to make it impossible to detect it from the ballots themselves? If the perpetrators of the fraud were thus successful in making a substitution which could not be detected from the ballots themselves, then, if I understand the reason-

ing of the majority, the very success of the fraud would prevent this court from holding that a fraud had been committed. In other words, the more skilful the execution of the fraudulent act the more conclusive the evidence that there had been no fraud.

If the undisputed sworn statement of Anderson is to be set aside by this court because the ballots show on their face no evidence that they are not genuine the question naturally arises: What kind of evidence and how much of it would it require to uphold such a finding as the trial court made? Must somebody have seen the change made? And if a witness claimed to have seen it made, and the ballots did not show on their face any evidence of alteration, would this court uphold the finding of the trial court based upon such testimony? If it is sufficient that "They bear on their face the evidence of their integrity," what evidence could be offered that would be sufficient to defeat the ballots? Persons who perpetrate election frauds do not do so in the public streets under an arc-light; neither do they do so ordinarily in the presence of persons who are not parties to the crime. If the rule in this state is to be that the ballots are conclusive unless they bear on their face the evidence of the fraud, it may prove easier than some people have thought to carry an election.

The following excerpts fairly indicate the position taken by this court and maintained up to this time:

"The whole controversy on this appeal centers around this one finding, and if there is any evidence in the record at all to support it, the judgment ought to be affirmed, as the rule—so firmly established by a long line of judicial opinions in this jurisdiction as to require no citation of authorities to support it—is to the effect that the appellate court will not disturb the judgment of a trial court, because of conflict in the evidence, where there is sufficient proof, if uncontradicted, to sustain it." (*Jensen v. Bumgarner,* 28 Ida. 706, 156 Pac. 114.)

".Appellants question the sufficiency of the evidence to sustain the findings. An examination of the record discloses that while there is conflict in the testimony, the case is well within the rule that findings of fact, made by a trial judge who has had the benefit of observing the demeanor of witnesses upon the stand and of listening to their testimony, will not be disturbed because of conflict if the evidence in support thereof, if uncontradicted, would be sufficient to sustain it." (*Independence Placer Mining Co., Ltd., v. Knauss,* 32 Ida. 269, 181 Pac. 701.)

"The rule that this court will refuse to disturb the findings of the trial court where there is a substantial conflict in the evidence does not apply, because in such case the trial judge, not having observed the witnesses, is in no better position than this court to pass upon the weight and credibility of the testimony." (*Jackson v. Cowan,* 33 Ida. 525, 196 Pac. 216.)   (All the testimony in this case was taken before a referee and the transcript submitted to the trial judge.)

I am unable to see how it can be successfully contended that in this case there is no substantial conflict in the evidence; or that the testimony of Anderson, if uncontradicted, would not support the finding of the trial court. I am comforted by the belief that even now the majority, though in this instance violating the rule, do not intend to change it. I think the judgment of the trial court should be affirmed.

(August 5, 1922.)

ON REHEARING.

1. Where ballots have been preserved in accordance with the statutory requirements, so that they have in no way been tampered with, they are the primary and controlling evidence of the number of votes cast for the respective candidates, and are sufficient in themselves, without further evidence, to contradict and overthrow the returns.

2. Statutory provisions relative to keeping the ballots after an election will be deemed directory only, and mere irregularities by the election officers in the performance of their duties in preserving the ballots, or omissions on their part strictly to obey the statutory requirements, will not be allowed to result in the rejection of the ballots.

3. *Held,* that there was a flagrant disregard of the provisions of C. S., sec. 626, relating to the care of ballots and election supplies after an election, by the election judges in the instant case, in that the ballot-boxes in question were taken to the office of one of the election judges, where unused ballots and the official rubber stamp were accessible, and by means of which ballots could have been substituted or altered so as to change the result from that shown by the election returns.

4. The burden of proof is upon the contestant in an election case to show that the ballot-boxes were safely guarded after the election was held. *Held,* that the contestant failed to make such proof, and that the evidence in the record shows the contrary.

5. Where conflicting evidence is submitted to a trial court, sitting without a jury, either as a court of law or as a court of equity, the findings of the court on questions of fact will not be disturbed where there is some competent evidence to support them.

6. *Held,* that the character of the evidence submitted to the trial court in this case is of such a nature that a new trial should be granted, in order that the appellate court may have before it all the evidence available and properly admissible in the case.

BUDGE, J.—A petition for rehearing has been granted in this case, the cause has been reargued and resubmitted, and we have again examined the record and briefs of counsel.

The controlling question in this case is whether the elec-

tion returns are correct and should control as against the ballots found in the ballot-box upon the trial. If this question is answered in the affirmative, respondent must be declared to have been duly elected and the judgment of the trial court affirmed, or a new trial granted.

The law is well established that where ballots have been preserved in accordance with the statutory requirements, so that they have in no way been tampered with, they are the primary and controlling evidence of the number of votes cast for the respective candidates, and are sufficient in themselves, without further evidence, to contradict and overthrow the returns. (*Newhouse v. Alexander,* 27 Okl. 46, Ann. Cas. 1912B, 674, 110 Pac. 1121, 30 L. R. A., N. S., 602, and note.)

It may also be laid down as a general rule, supported by the great weight of authority, that statutory provisions relating to keeping the ballots after an election will be deemed directory only, and not mandatory, and that therefore mere irregularities by the election officers in the performance of their duties in preserving the ballots, or omissions on their part strictly to obey the statutory requirements, will not be allowed to result in the rejection of the ballots. (*Averyt v. Williams,* 8 Ariz. 355, 76 Pac. 463.) In 10 Am. & Eng. Ency. of Law, 2d ed., p. 830, it is said: "When it is made to appear that the statutory provisions have not been complied with, this fact alone does not render the ballots inadmissible, but merely throws upon the person who asks the recount, the burden of proof to show that they have not been tampered with."

There are many cases which hold that if as a result of the ballots not being kept as required by statute, they are exposed so as to furnish a reasonable opportunity to be tampered with, they cannot be permitted to decide the result of an election." (30 L. R. A., N. S., note, at p. 606.)

The evidence shows, without dispute, that on the morning following the election, the two ballot-boxes, furnished as required by C. S., secs. 571 and 629, one containing the bal-

lots voted and a checking list, and the other containing defaced, mutilated and unvoted ballots, stubs or ballots voted, a checking list, official rubber stamp, and all other material furnished the judges and clerks of election and· used or not used by them during the holding of the election; were taken by Dryer and Anderson, election judges, to the former's office in Salmon City and were placed first in the front office and later in the back office; that the door leading out of the back office was usually kept locked, but the door to the front office was usually unlocked although Dryer was away from the office a considerable portion of the time.

C. S., sec. 626, provides that: "After the canvass of the votes the judges of election must inclose and seal one 'of the poll lists; also all stubs and unused ticket books, electors' oaths, defaced or mutilated ballots, and the election stamp, under cover, directed to the clerk of the board of county commissioners of the county in which such election was held. The packages thus sealed must be delivered direct to the said clerk personally, or transmitted by special messenger without expense to the county, or deposited in the nearest postoffice, by one of the judges to be chosen by lot, and the postage thereon and the fees for registering the same must be fully prepaid, and said package must be duly registered and· receipt therefor taken. The second poll list and ballots must be kept with the seal unbroken for at least eight months, unless the same is required as evidence in a court of law in any case arising under the election laws of this state, and then only when the judge having said ballot-box in charge is served with a subpoena requiring him to produce the same in court as evidence in any such before mentioned case, when the same may be opened under the direction of the court."

Conceding that the foregoing statutory provisions are directory rather than mandatory, there was a flagrant disregard of. the statute by the election judges in that both ballot-boxes were taken to Dryer's office, where unused ballots and the official rubber stamp were accessible and by

means of which ballots could have been substituted or altered in order to change the result from that shown by the election returns.

The trial court found that the ballots of Depot precinct "were in the constructive possession of one of the election judges for over four months, . . . . and that while in his custody, they were exposed to the reach of unauthorized persons, and that during said time they were changed and tampered with to an extent that makes them unreliable as evidence, and they do not express the intentions of the voters of said Depot precinct; and have no probative force." The court also found that "the positive testimony of the election officials constitutes the best evidence as to the intentions of the voters of said Depot precinct, and an inspection of the ballots shows that at the time of their examination by the court, they were not in the same condition as when cast by the voters, there being a difference between the count made by the court and the election judges respectively of fifty-four votes, and no evidence of fraud on the part of the election officers. It is further found that on the counting of the votes for other candidates other than that for commissioner of the first district, that the votes practically correspond with the returns made by the election judges."

If there is evidence to support this finding, the judgment of the trial court should not be disturbed. In the original majority opinion it is held that: " . . . . the ballots are the best evidence, and that the evidence is not sufficient to sustain the finding of the trial court to the effect that during the time the ballots were in the constructive possession of one of the election judges they were changed and tampered with to an extent that makes them unreliable as evidence, and that they do not express the intention of the voters of said precinct and have no probative force."

It is not denied that the padlocks with which the ballot-boxes were locked were flimsy, nor that the slits in the boxes were considerably larger than provided by law, nor that

they were not in the actual custody of any person, or afforded any protection other than as above stated.

It appears from the evidence that the office was on the ground floor and on one of the principal streets of Salmon City. Witness Anderson testified in this connection as follows:

"Q. Have you had any talk with Mr. Dryer since this case commenced, with reference to keeping this box?

"A. Discussed about it the last day or two.

"Q. Who was present and where was it?

"A. On the street, just he and I talking.

"Q. Who was present, anybody?

"A. John Dryer and myself.

"Q. You said on the street, whereabouts on the street?

"A. At the office, the office was open."

This evidence was sufficient to warrant the court in finding that Dryer's office was on the street and on the ground floor, especially in view of the fact that the trial judge must have had ordinary information as to the location of the office. However, appellant does not assign this particular finding as error, and it should therefore be upheld.

Neither is it apparent that these boxes were not exposed to view. Mr. Dryer testified that he kept the boxes in his back office until the sheriff called for them. There is no greater reason for assuming that they were covered than that they were uncovered. The burden was upon the contestant to show in the first instance that the boxes were safely guarded. This he failed to do, but, upon the contrary, the evidence shows that they were not.

When the boxes were taken to Mr. Dryer's office, the keys were given to Arbogast, one of the voting judges, who testified as follows:

"Q. I will ask you what was done with the ballots when the count was completed?

"A. They were threaded and put in one of those ballot-boxes here.

"Q. What was put in the other box?

"A. What was what?

"Q. What was put in the other box?

"A. Well, I think one held all of the credentials belonging to the election, probably all. I don't know whether— I don't remember just exactly whether all the stuff—there was some surplus left, tickets that were not used and I think they were probably put in the other box."

Upon opening the ballot-box it was found that the ballots were not strung on a string, and if the testimony of this witness is to be believed, then there was a tampering with the ballots.

Percy Anderson, one of the counting judges, testified that at least twenty-five ballots were marked with a cross at the head of the Republican party ticket, "and a cross after the name of Viel, and the name of Summers scratched out." The record shows he subsequently testified that there were about twenty-five such ballots, "the name of Summers *not* being crossed or scratched out." From an examination of the entire testimony given by this witness it is apparent that the word "not" was omitted by the official reporter, and the trial judge certifies that if his attention had been called thereto he would have caused the word "not" to be inserted, thereby making the record speak the truth.

Mrs. Cecil Mulkey, one of the counting judges, in answer to a question as to whether there were quite a number of ballots marked with a cross at the head of the Republican ticket, a cross after the name of Viel, and the name of Summers not stricken out, answered: "Yes, I would say a number."

Upon opening the ballot-box, only two such ballots were found.

The rule is well established in this jurisdiction that where conflicting evidence is submitted to a trial court, sitting without a jury, either as a court of law or as a court of equity, the findings of the court on questions of fact will not be disturbed, where there is some competent evidence to support them. (*Wolf v. Eagleson*, 29 Ida. 177, 157 Pac.

1122; *Davenport v. Burke,* 30 Ida. 599, 167 Pac. 481.) In
*Dennis v. Caughlin,* 23 Nev. 188, 44 Pac. 818, witnesses tes-
tified that an unusual number of blank votes for the office
of sheriff were noticed at the time of counting the votes,
and some witnesses placed the number at from ten to twelve,
while others placed it at a less figure. On a recount only
three ballots were found showing such blank votes. The
court accepted the returns and excluded the ballots, holding
that in an election contest the finding of the trial court that
the ballots have been tampered with after a canvass and
return by the election officers will not be disturbed where
the evidence is conflicting, and stating that the rule, that
as between the ballots and a canvass of them the ballots
control, has no application where the ballots have been tam-
pered with after they were deposited in the box.

In view of the evidence to which reference has been made,
it is hardly reasonable to hold that there is no substantial
evidence to support the findings of the court. If this evi-
dence is worthy of any consideration whatever, and we think
it is, it creates a conflict, with respect to which the finding
of the trial court is conclusive under numerous decisions
of this court.

Nor is it probable that all of those present at the hold-
ing of the election would fail to detect a mistake of fifty-
four votes between these contestants. It was the special
business of the election officials to properly count and keep
tally of the votes cast. That such a mistake was made
would seem highly improbable in view of the fact that very
little discrepancy was shown between the returns and ballots
cast for other candidates, and that not one of the officials
present contradicted the returns made to the clerk of the
board of county commissioners.

In *Tebbe v. Smith,* 108 Cal. 101, 49 Am. St. 68, 41 Pac.
454, 29 L. R. A. 673, it is held that the verity of ballots
can be discredited by showing actual tampering therewith,
"or that they have been exposed under such circumstances
that a violation of them might have taken place. When all

this has been said, it remains to be added, that the ques
tion is one of fact, to be determined in the first instance
by the jury, or trial judge.''

In *Hannah v. Green,* 143 Cal. 19, 22, 76 Pac. 708, Mr.
Justice McFarland, speaking for the court, uses the follow-
ing language: ''The question whether ballots have been suffi-
ciently taken care of so as to preclude any reasonable sus-
picion that they are not in their original condition is a
question which is largely within the judgment and discretion
of the trial court, and its determination of that question
should not be disturbed here, if the evidence fairly warrants
the conclusion which the court reached on that subject.''

In *Chatham v. Mansfield,* 1 Cal. App. 298, 82 Pac. 343,
the court said: ''Whenever circumstances appear that it is
apparent that opportunities existed for evil minded persons
to have examined the ballots, and changed them, their integ-
rity is impeached.''

While in the leading case of *People v. Livingston,* 79
N. Y. 279, the court observed: ''They [the returns] may be
impeached for fraud or mistake, but in attempting to rem-
edy one evil we should be cautious not to open the door to
another and far greater evil. After the election it is known
just how many votes are required to change the result. The
ballots themselves cannot be identified. They have no ear-
mark. Everything depends upon keeping the ballot-boxes
secure. . . . . Every consideration of public policy, as well
as the ordinary rules of evidence should establish the fact
that the ballots are genuine. It is not sufficient that a mere
possibility of security is proved, but the fact must be shown
with reasonable certainty. If the boxes have been rigor-
ously preserved, the ballots are the best and highest evi-
dence; but, if not, they are not only the weakest, but the
most dangerous, evidence. . . . . ''

The contents of both ballot-boxes were examined by the
trial court, with the consent of counsel. Only one of these
boxes was forwarded to this court. What the other con-
tained we do not know, other than that it contained stubs

of ballots voted, unvoted ballots, the official stamp, etc.; whether the stubs corresponded with the ballots cannot be determined from the evidence before us. Whether there was anything in the box, which was not forwarded to this court that influenced the trial court in reaching its decision, we cannot say. If, under any theory, either of these boxes was properly subject to examination by this court, both of them should have been sent up as part of the record. The character of the testimony offered in this case is such that in the opinion of the writer a new trial should be granted, in order that this court may have the benefit of all the evidence properly admissible in this case.

The cause is, therefore, remanded for a new trial. No costs awarded.

McCarthy and Lee, JJ., concur.

DUNN, J., Concurring.—I still adhere to the views expressed in my dissent to the original opinion and think the judgment of the trial court should be affirmed, but I concur in ordering a new trial as the best result that can be obtained.

Rice, C. J., dissents.